(36 Misc. Rep. 49.)

## CITY OF ITHACA v. BABCOCK.

(Supreme Court, Special Term, Tompkins County. September, 1901.)

1. CONSTITUTIONALITY OF ACT.
　　An act will not be held unconstitutional by a trial court, unless its provisions are so plainly unconstitutional that there can be no reasonable doubt on the subject.

2. SAME—ESTOPPEL—MUNICIPAL IMPROVEMENTS.
　　Where an act (Laws 1900, c. 197) has been passed to remedy any defects in an act (Laws 1895, c. 162) establishing a system of sewerage in a city, a taxpayer, in proceedings to establish the system and to levy assessments thereon, who never attacked either the system or proceedings, and who did not protest against his assessments on notice thereof, is estopped, in an action to recover the taxes, from questioning the constitutionality of the acts or the validity of the proceedings thereunder.

Action by the city of Ithaca against George W. Babcock to recover certain sewer assessments. Judgment for plaintiff.

Edward J. Mone (Jared T. Newman, of counsel), for plaintiff.
David M. Dean (William Nelson Noble, of counsel), for defendant.

FORBES, J. This is an action to recover four several sewer assessment tax levies, aggregating $83.16, with interest at 12 per cent. per annum from the 5th day of December, 1900. The assessments were first made and levied in the years 1896 and 1897, under chapter 162 of the Laws of 1895, entitled "An act to provide for the construction and maintenance of a system of sewerage in the city of Ithaca," known as the "Sewerage Act." They were placed upon the assessment roll entitled: "Sewerage Assessments, 1897. City of Ithaca." The defense raises several questions: (1) The illegality of the original assessments. (2) The illegality of the warrant issued by the plaintiff for the collection of said tax. (3) That the acts of the legislature and the reassessments of said tax are unconstitutional and void.

It must be borne in mind that the original act, and the acts amendatory thereof and supplementary thereto, were created for the benefit of the inhabitants of the city of Ithaca, in furtherance of the public health, and to suppress the nuisance of contaminating the water courses and supplies within said city. The evidence shows that much of the filth of said city had been thrown upon the surface of the land, and was also concealed by cesspools beneath the soil of the landowners, occupants, and inhabitants along and upon plaintiff's public streets. The former system had clearly become a nuisance, and was actually endangering the public health, and was contaminating many water courses and private wells in the

city. Under the laws of this state, as a police measure merely, the
plaintiff not only had a right to adopt a sewerage system, but it
was its duty, under the act of 1895, to protect its citizens from
filth contamination. This act must, therefore, be upheld, if it can
be done properly, and its provisions should be sustained and en-
forced, as a matter of public necessity. The constitutionality of the
several acts is presumed; and that question should not be passed
upon adversely to plaintiff by a trial court, unless the provisions of
said act are so plainly unconstitutional that there can be no reason-
able doubt about their unconstitutionality. This seems to be, clear-
ly, the law of this state.

In 1896 the plaintiff proceeded to open sewer mains in certain
public streets and lay its sewer pipes therein, and tendered service
through the same to its citizens (including the defendant), located
upon such streets, completing said sewerage system in the heart of
the city. A uniform benefit rule was adopted and established
throughout that portion of said city through which its mains and
sewer pipes were laid, at an expense of not to exceed 30 cents per
front foot upon said streets and along the defendant's premises,—
much less than the cost of laying the pipe along the defendant's
premises. While the defendant is privileged to use said sewer sys-
tem in front of his premises, and they are accessible to the full bene-
fits of said system,—probably to many times the value and extent
per front foot of the assessment laid upon his property, located on
Buffalo street,—still he refuses to avail himself of these benefits and
privileges, and now he refuses to pay said assessments. It is con-
ceded that the defendant was notified of this sewerage tax levy,
sought to be imposed upon the property in question; that he had an
opportunity to appear before the proper authorities on grievance
day, but neglected to do so; and that he has never taken any action
in any manner to contest the validity of the assessment or tax by
any direct proceeding before the common council or in any of the
courts of this state.

In this action, which is merely one to enforce the payment of
the reassessment so levied, the defendant answers by setting up all
of the questions which could have been therein litigated, and he
now demands that said assessments and tax levy shall be declared
void, and as not enforceable against him or his property. It is
difficult to see at this time how a collateral defense can be properly,
legally, or even equitably made to the enforcement of the tax levied
and sought to be collected. It seems to me that the act of the
legislature, known as "Chapter 197 of the Laws of 1900," authorizing
the reassessment benefits upon the defendant's property, is in a
sense a legislative construction of the former act, and is in effect
an enabling act, to remedy and cure the alleged defects in the former
assessments and tax levy, and that it was designed for that purpose.
These acts, being of a beneficial character, and designed to promote
the public health of residents and inhabitants of said city, the system,
having been so far completed, ought, if possible, to be upheld.
About 70 per cent. of the tax reassessed and levied in 1900 has been

paid voluntarily. The greater share or proportion of said tax levy is being borne by the city through general taxation under said former act, and a merely technical defense ought not to relieve the defendant of his just proportion of the burden imposed; nor should that kind of a defense be sustained in law or in equity. As this court on the trial said:

"I do not see where there is any serious jurisdictional defect which the defendant can seize upon at this time for the purpose of destroying the beneficial work of the plaintiff. There may have been inaccuracies in some of the methods adopted, since the system of levying benefits by the front foot rule assessment may not work with perfect equality in every part of the city. Still the defendant, and all the property owners along the several streets where pipes and mains have been laid, have been greatly benefited thereby. When it was found that the first tax levy could not, for want of notice, be legally enforced or collected under the law of 1895, the plaintiff and its inhabitants went back to the legislature—the body which gave them authority in the first place to adopt the sewer system—with all of these embarrassments pointed out. The legislature, with presumed knowledge of all the facts, reaffirmed the whole scheme of sewerage assessments and benefits, and then ordered the work of its enforcement and collection to be continued, under steps and methods suggested in said act."

The evidence shows that probably the plaintiff could not have adopted any other theory of assessment which would have given better satisfaction or more exact equality and equal justice to each property owner; and this court cannot see how the defendant is benefited by showing that in some parts of the city some other person than himself has not been benefited. It seems to me that, under that legislative construction placed upon what had already been done, that act leaves the enforcement of the tax in question no longer open to dispute in an action of this character. I cannot consent to do an injustice to the city of Ithaca and to its citizens by overthrowing an assessment and taxation upon technicalities merely; especially so where, on notice to him, the defendant, on grievance day, found no fault with that assessment and levy, thus acquiescing in the assessment for benefits upon his premises, and when he has not in any manner attempted to appeal from or review the same through the proper channels open to him. It seems to me that he ought not now to be permitted to review collaterally the action of the plaintiff's officers and the sewerage commissioners in an action for the enforcement of the assessment made and the tax levied, with which he has heretofore found no fault. In equity he ought to be held to be estopped from preventing the enforcement of said tax, unless some more serious jurisdictional question may be raised. Judgment must therefore be ordered, in favor of the plaintiff and against the defendant, for the amount of said tax and the interest thereon, together with the costs of this action. Judgment is ordered accordingly.

Judgment accordingly.