## NEWBY & WHITE v. DRAINAGE DISTRICT.

(Filed 10 September, 1913.)

1. **Drainage Districts—Constitutional Law.**

   The Drainage Act of 1909 is constitutional.

2. **Drainage District—Judgments—Collateral Attack.**

   A drainage district laid off under the provisions of the act of 1909 is a *quasi*-municipal corporation, partaking to some extent of the character of a governmental agency, and neither its existence nor the regularity of its proceedings can be collaterally impeached, in an action for trespass for cutting down trees in 'constructing the drainage canal.

3. **Drainage Districts — Damages—Interpretation of Statutes—Proceedings—Judgments—Estoppel.**

   The Drainage Act of 1909 affords ample opportunity and machinery for the landowner in a district laid off thereunder to assert his rights, including those of damages to his land, with the right of appeal to the Superior Court; and he is concluded, by the express provision of the statute, by the order of the court confirming the final report of the viewers, unless he has preserved his rights in accordance with the statutory requirements.

4. **Drainage Districts—Lis Pendens—Notice—Subsequent. Purchasers.**

   The pendency of a proceeding to lay off a drainage district under the provisions of the act of 1909 is notice as to all the lands embraced in the district, and the grantees thereof are bound by the statutory requirements as to .the procedure to recover damages to the lands, as were their grantors who were parties to the proceedings and who owned the lands at that time.

.APPEAL by defendant from *Whedbee, J.,* at Spring Term, 1913, of PERQUIMANS.

In 1909 sundry landowners in Chowan and Perquimans counties filed before the Clerk of the Superior Court of Chowan

County a petition for the establishment of a drainage district under chapter 442 of the Public Laws of 1909. J. P. and L. A. Goodwin were signers of this petition. Proceedings were had conformable to the provisions of the Drainage Act, and a preliminary report of the board of viewers was considered on 11 September, 1909, and. the decree entered establishing the district, to be known as Bear Swamp Drainage District.

The final report of the board of viewers was considered on 30 November, 1909, and duly confirmed. On 3 January, 1910, the petitioners, J. P. and L. A. Goodwin, sold and conveyed to the plaintiffs herein the land described in the complaint, which land was embraced in the Bear Swamp Drainage District. Subsequently the commissioners of the drainage district proceeded through a contractor to construct the canals and ditches called for in the survey and report of the board of viewers, and plaintiffs allege that in the construction of the main canal a large amount of valuable timber on the lands of plaintiffs described in the complaint was wrongfully and unlawfully destroyed, and that the cost of removing the balance of the timber had been greatly enhanced, and that by reason of these things the plaintiffs had been endamaged in a large sum.

Evidence was introduced by the plaintiffs tending to support these allegations, and at the close of the plaintiffs' testimony the defendant moved for a nonsuit. This motion was overruled, and the defendant board introduced in evidence the entire record in the proceedings for the establishment of the drainage district, and also evidence tending to show that plaintiffs had, in fact, sustained no damage. There was a verdict and judgment against the defendant board, from which judgment the board appeals to this Court.

*Pruden & Pruden, S. Brown Shepherd, and W. S. Privott for defendants.*

*Bond & Bond and P. W. McMullan for plaintiffs.*

BROWN, J., after stating the case: Upon the foregoing facts we are of opinion that this action was improvidently brought,

and should be dismissed. There is no contention that the Drainage Act of 1909 is obnoxious to either the State or the Federal Constitution. This question was settled by our decision in *Sanderlin v. Luken,* 152 N. C., 738. But conceding. the validity of the law, plaintiffs maintain that there has been no compliance with its provisions, and that the board of drainage commissioners were trespassers upon their lands. If, by this charge, plaintiffs mean to challenge the existence of a lawful drainage district, then they are in the anomalous position of insisting upon a judgment against a body corporate that does not, in fact, exist. If the defendant board was without authority in entering upon the lands of plaintiffs, it is equally without authority to levy assessments for any purpose, and the judgment plaintiffs recovered below would be a thing of no value. But the conclusive answer to this suggestion is that a drainage district is a *quasi*-municipal corporation, and neither its existence nor the regularity of its proceedings can be collaterally impeached.

In *Sanderlin v. Luken, supra,* it is held that these drainage districts are regarded as *quasi*-public corporations, partaking to some extent of the character of a governmental agency. They are not unlike special road and school districts, and it is elementary that the validity of such districts cannot be collaterally attacked.

In Cyc., 14, 1029, it is said in the text that the legality of the organization of a drainage district cannot be attacked collaterally, as in an action by it to enforce assessment. This must be equally true in an action against it for damages for assuming to exercise the rights and powers of a lawfully constituted drainage district.

In *Parker v. Harris County Drainage District,* 148 S. W., 360, the Texas Court of Civil Appeals says: "There can, we think, be no question that drainage districts organized under the act in question are public or *quasi*-public corporations." *Fallbrook v. Bradley,* 164 U. S., 112; *People v. LaRue,* 67 Cal., 526. And continuing, the Court says: "It is a firmly established doctrine that when the law provides for the creation of

such districts by the action of any public body, as the commissioners' court, in the present drainage law, the validity of such action in the creation or organization of such districts cannot be questioned, except by direct proceeding in *quo warranto* at the suit of the State, for mere irregularity in the failure to comply with the prescribed procedure."

A case much in point is *Smith v. Claussen Park Drainage District,* 229 Ill., 155. In this case the Court says: "The question whether the appellee drainage district had been legally organized did not, and could not, arise in the proceeding for the condemnation for the right of way for the ditch across the lands of the appellant company. Whether it (the district) correctly exercised such power or jurisdiction cannot be considered in this, a collateral proceeding. The legality of the organization of the drainage and levee district can be attacked and brought under judicial review only in a direct proceeding by *quo warranto.*"

If plaintiffs concede that the defendant is a lawfully constituted drainage district, but attack the regularity of its proceedings, again both reason and authority block the way.

The statute affords ample opportunity to every party in interest to assert his rights, and adequate machinery for maintaining them. Like a general practitioner of the olden time, the Drainage Act carries its remedies in its own saddle-bags, and advertises that there are none other.

"The remedies provided for in this act shall exclude all other remedies." Drainage Act, sec. 37.

Section 11 of the act makes it the duty of the engineer and viewers to assess the damages claimed by any one for lands taken or for inconvenience imposed. It will be seen, therefore, that the grantors of plaintiffs had abundant opportunity to set up the very claims which they attempt to assert in this action. They were before the court; they were moving parties in the cause. If they had claimed damages and had been dissatisfied with the amount awarded, they had their right of appeal to the Superior Court. They have had their day in court, and "not having spoken when they could have been heard, they cannot now be heard when they should be silent." *White v. Lane,* 153 N. C., 16.

In courts of justice there comes a time when a man is called upon to speak or else forever thereafter hold his peace. The statute, in terms, declares that the order of the court confirming the final report of the viewers "shall be conclusive and final that all prior proceedings were regular and according to law, unless they were appealed from." And this statutory declaration that the regularity of the proceedings shall not be subject to collateral attack is in line with the decisions of the courts and text-writers of good repute.

In discussing these drainage districts, Farnham, in his work on Water and Water Rights, says: "An adjudication by the proper tribunal that the proceedings conform to the statute cannot be inquired into in a collateral proceeding; nor can the various steps which are taken in proceedings after jurisdiction has been acquired be questioned. That the lands in a reclamation district were swamp and overflowed, and that lands assessed for reclamation purposes would be benefited thereby, being jurisdictional facts, which the board of supervisors necessarily determine in approving the petition for the formation of the district, its judgment on those questions, where all the parties were brought before it by proper notice, is conclusive, and cannot be collaterally attacked." *People v. Wassoon,* 64 N. Y., 167; *Wabash Eastern R. Co. v. East Lake Fork Special Drainage District,* 134 Ill., 384; 10 L. R. A., 285; 25 N. E., 781; *Auditor General v. Melze,* 124 Mich., 285; 82 N. W., 886; *Barker v. Vernon Twp.,* 63 Mich., 516; 30 N. W., 510; *Oliver v. Monona County,* 117 Iowa, 43; 90 N. W., 510; *Ithaca v. Babcock,* 36 Misc., 49; 72 N. Y. Supp., 519; *Jebb v. Sexton,* 84 Ill. App., 45; *Reclamation District, No. 542, v. Turner,* 104 Cal., 334; 37 Pac., 1038.

A case directly in point is *Oliver v. Monona County, supra,* where it is held that the failure of a board of supervisors in proceedings to establish a ditch for the drainage of a tract of land to award and pay the damages to the property through which the ditch was to pass, before locating it, is not jurisdictional, and cannot be made the basis of a collateral attack.

The plaintiffs, of course, stand in the shoes of their grantors, who were parties to the proceeding for the establishment of the district, as a pendency of the proceeding is notice with respect to all lands embraced in the district.

Upon consideration of the whole case, we think the action should be dismissed, and it is so ordered.

Action dismissed.

This disposes of both appeals.