DRAINAGE COMMISSIONERS OF WASHINGTON COUNTY DIS-
TRICT, No. 4, v. EASTERN HOME AND FARM ASSOCIATION,
INC.

(Filed 20 May, 1914.)

1. **Drainage District—Smaller Districts in Larger Ones—Bond Is-
sues.**

Where a smaller drainage district is laid off within the bound-
aries of a larger one, theretofore organized, the purposes of
each harmonizing with the purposes of the other, and the lateral
ditches in the former being especially necessary for the proper
drainage of the lands therein, an issue of bonds by the smaller
district is not rendered invalid at the suit of a purchaser be-
cause of the larger district which includes it, it being provided
that the bonds of the latter shall have priority of lien to those
of the former, with which understanding the bonds were sold
and purchased.

2. **Drainage Districts—Bond Issues—Mortgages—Priority of Liens.**

It has become the public policy of our State to authorize the
formation of drainage districts, with statutory authority to levy
assessments, under stated conditions, upon the lands situated in
the district, with the object of making them of greater value;
and where the statute has authorized the laying off of one of
these districts, a mortgage on lands therein situate, though taken
before the district is formed, is subject to the authority of the
commissioners to levy the assessment, and bonds issued accord-
ingly for the purpose of drainage have a superior lien to that
of the mortgage.

3. **Same—Trusts and Trustees—Parties.**

Where the purchaser of bonds issued by a drainage district
refuses to take the bonds upon the ground that he had purchased
them upon condition that they should be the first lien upon the
lands contained in the district to the extent of the assessment,
and that a large portion of the lands were subject to a first lien by
mortgage, or deed of trust, the mortgagee or trustee is not a
necessary party in an action involving the validity of the bonds.

APPEAL by defendant from *Ferguson, J.,* at Spring Term,
1914, of WASHINGTON.

*Small, McLean, Bragaw & Rodman* for plaintiffs.
*Frank H. Bryan* for defendant.

CLARK, C. J.   This is a·controversy submitted without action under Rev., 803.   For the purpose of straightening and deepening Pungo River by cutting a canal from a point near the mouth of Indian Run to where the Norfolk Southern Railroad crosses the Pungo, the landowners on both sides of that river in 1910 organized the "Pungo River Drainage District," under chapter 442, Laws 1909.   Under this proceeding a large body of lands were 'made possible for drainage by the canal that was constructed.   But while the landowners on both sides of this canal, which ran in a·northwesterly direction, were interested in the ' construction of said large canal, the landowners on the southwest side of the canal were not in any wise interested in the construction of any canals leading from this main canal through the lands lying on the northeast side thereof, nor were the owners of the lands on the northeast side in any wise interested in the construction of can'als leading from the said main ·canal through the lands lying on the southwest of said canal.

Yet the construction of these lateral canals is absolutely necessary to complete the drainage of the territory through which the main canal is being dug by the union of the landowners on both sides thereof who had formed for that purpose the "Pungo River Drainage District."   On the northeast side of this Pungo River canal, and wholly within the bounds of the "Pungo River Drainage District," lies a tract of 10,000 acres owned by the John L. Roper Lumber Company and E. A. Rice. This territory was necessarily within the Pungo River Drainage District, as its waters could only be drained off by the construction of the Pungo River canal; but in addition to that, it was necessary that the lateral canals should be constructed through said 10,000-acre tract, leading into the main canal, and in the construction of these lateral canals no one was interested except the owners thereof.   Thereupon they formed, in 1913, the drainage district known as Washington County Drainage District, No. 4, under chapter 442, Laws 1909, and chapter 67, Laws 1911, and the drainage commissioners of that district (the plaintiffs) contracted with this defendant, the "East Carolina Home and 'Farm Association," to do the construction work upon

stipulated terms as to prices and conditions, and the latter agreed to accept the bonds of said Washington County Drainage District, No. 4, in payment. The defendant now refuses to do the work and accept these bonds in payment, alleging that:

1. The Washington County Drainage District, No. 4, has no lawful authority to issue said bonds, because it lies wholly within the boundaries of the Pungo River Drainage District.

2. It was a condition of the agreement that these bonds should constitute a first and permanent lien, subject only to State and county taxes and to the prior lien for the payment of the bonds and interest issued for the Pungo River Drainage District; whereas, in February, 1911, the Roper Lumber Company had executed a mortgage to the Manhattan Trust Company upon its interest in the lands lying in said Washington County Drainage District, No. 4. It is agreed that said lands are worth very far in excess of the amount of the drainage bonds for both districts that are assessable against it, and also the said mortgage covers very much greater extent of land belonging to said Roper Company than is embraced in this last named drainage district.

Two questions are presented:

1. Does the fact that the land constituting the Washington County Drainage District, No. 4, lies wholly within the boundaries of the Pungo River Drainage District, previously created, render invalid the organization of the Washington County Drainage District, No. 4, and invalidate the bonds it proposes to issue to the defendant?

2. Does the deed in trust from the Roper Lumber Company, executed in 1911, have priority over the drainage assessment which shall be made for the payment of these bonds and interest thereon?

It is agreed that if the Court shall hold that said bonds are valid and constitute a prior lien to said deed in trust, then there shall be judgment against the defendant; but if the Court shall be of the opinion that the bonds are not valid for the reason set out by the defendant, or that the deed in trust of the Roper Lumber Company has priority over the drainage assessment for the Washington County Drainage District, No. 4, then judg-

ment shall be rendered against the plaintiffs, the board of drainage commissioners of said drainage district.

The formation of the Washington County Drainage District, No. 4, covers a part of the territory embraced in the Pungo River Drainage District, but in no wise conflicts with the purposes of the latter. The latter was for the purpose common to the entire scope of territory embraced within its limits, which was to construct the Pungo River canal. The Washington County Drainage District, No. 4, was formed subsequently, and is for the purpose of benefits to accrue solely to that part of the territory of the Pungo River Drainage District which is embraced within the Washington County Drainage District, for which most of the landowners of the larger district were not willing to issue bonds, since they would derive no benefit from the construction of the lateral canals that are indispensable for the drainage of the Washington County Drainage District, No. 4. The assessments for the principal and interest of the drainage bonds issued by the smaller and later formed district are postponed to the payment of the assessments for the principal and interest of the bonds issued by the older and larger district, and it was so understood and agreed between the plaintiffs and defendant.

There is no conflict between the two districts, and the purposes of the smaller district are ancillary to the larger district. These drainage districts are not municipal corporations, but are *quasi*-public corporations. *Sanderlin v. Lukens,* 152 N. C., 738; *Trustees v. Webb,* 155 N. C., 379; *Commissioners v. Webb,* 160 N. C., 594. But even if they were, their condition would be roughly similar to that existing between the county and the State or between a township and a county. The analogy is not perfect, but this conveys the idea. A somewhat similar arrangement is seen in the road system of France, where they have National roads maintained by the General Government; departmental (or State) roads supported by the departments, and cantonal (or county) roads kept up at the expense of each canton. Each lesser territory thus maintains the roads of special interest to it, in which the larger divisions are not interested.

A thorough system of drainage will revolutionize many sections of the State, especially in eastern North Carolina, by improving the health of communities and redeeming vast areas of the most fertile lands for cultivation; but this is practicable only by assessments laid on the areas' specially benefited, each for the benefits received by it.

As to the second proposition: the mortgage by the John L. Roper Company to the Manhattan Trust Company is dated 1 February, 1911. Section 34, chapter 442, Laws 1909, under which the Washington County Drainage District, No. 4, was formed, provides that the assessments for drainage *"shall constitute the first and paramount lien,* second only to State and county taxes, upon *the lands assessed for the payment of said bonds and the interest thereon as they become due,* and shall be collected in the same manner by the same officers as the State and county taxes are collected." Chapter 67, Laws 1911, it is true, struck out section 34 of chapter 442, Laws 1909, and inserted in lieu thereof section 11, chapter 67, Laws 1911, in which the language just quoted does not appear; but the identical provision is found in section 12 of said chapter 67, Laws 1911.

The mortgage, therefore, when executed, was subject to the authority to form these drainage districts for the betterment of the lands embraced therein. The statute is based upon the idea that such drainage districts will enhance the value of the lands embraced therein to a greater extent than the burden incurred by the issuing of the bonds, and the mortgagee accepted the mortgage knowing that this was the declared public policy of the State.

Besides, by reference to an extract from the mortgage, incorporated in the facts agreed in this case, it will be found that by one of the covenants the mortgagor is required to "pay and discharge all taxes *and assessments* lawfully levied or assessed upon the property embraced within the mortgage." Moreover, assessments for public improvements required by the public policy of the State must be reasonably presumed to have been in the contemplation of the parties at the time of the execution of the mortgage. At the date of the execution of the mortgage

the law provided for the priority of these assessments over all others except State and county taxes, and the mortgagor and mortgagee are presumed to have had knowledge of the law and of the principle that every one who acquires an interest in land takes it "subject to the right of the sovereign to levy general taxes upon it and to impose upon it the burden of paying the expenses of public improvements, which confer upon the lands a special benefit." An analogous instance is the assessment of abutting proprietors for street improvements or upon landowners for building a county or township fence, all of which take priority over the holder of a mortgage, because the mortgagor can convey no exemption from public burdens which he does not himself possess. The principle that special assessments, as well as taxes, are superior to a prior mortgage is held, with numerous citations in the exhaustive note, in *Baldwin v. Moroney* (173 Ind., 574), 30 L. R. A. (N. S.), 761. See, also, *Seattle v. Hill* (14 Wash., 487), 35 L. R. A., 372, and notes, as to assessments for street improvements, and *Provident Institution v. Jersey City,* 113 U. S., 506, as to lien for water rents.

The fact that the trustees named in the Roper mortgage are not made parties is immaterial, as is held in *Baldwin v. Moroney, supra,* and this must be so if the mortgagee took with notice that, under the public policy of the State, as declared by the statute enacted prior to the execution of the mortgage, such assessments would be a "paramount lien to all others except for taxes."

In *Richmond v. Williams,* 102 Va., 733, the mortgage was given in 1889, while the city limits were not extended to take in the property until 1891; but it was held that the mortgagee was not entitled to notice of the assessment for the improvements.

In this case the land embraced within the boundaries of Washington County Drainage District, No. 4, constitutes only a small part of the lands covered by said mortgage. It is claimed by plaintiffs that the lands held as security for the mortgage debt are greatly in excess in value of the amount of the debt; that instead of an impairment of the security, its value is enhanced; and that the holders of the mortgage are benefited

and not injured by this work, which· has been adjudged to be advisable and declared to be "a public benefit and conducive to the public health, convenience, utility, and welfare."

The judgment affirming the validity of the Washington County Drainage District, No. 4, and of the bonds issued by authority of the decree in that case, and holding that such bonds have a prior lien to the mortgage executed thereon prior to the formation of said district, is

Affirmed.