R. B. TAYLOR v. COMMISSIONERS OF MOSELEY CREEK DRAINAGE DISTRICT.

(Filed 16 October, 1918.)

1. **Drainage Districts—Statutes—Assessments—Notice—Publication—Deeds and Conveyances—Warranty.**

   A motion in the cause, in proceedings for establishing a drainage district, by one who has conveyed lands therein, will be denied, when made on the ground that such person had not been personally served and has conveyed the land to another with warranty against liens or encumbrances, when it appears that the purchaser, in possession, had been personally served, and the grantor lived only a few miles from the district wherein the work was in progress, and the statutory notices had been published to bring in the landowners, with ample time given for objection, exception, or appeal, under the requirements of the statute, which had not been observed or followed.

2. **Drainage District—Owner's Consent.**

   It is not necessary that every owner of land within a drainage district should have assented to its formation when the statutory number thereof have done so.

3. **Drainage Districts—Assessments—Benefits—Findings by Clerk.**

   An owner of lands in a drainage district is liable for a proper assessment in accordance with the benefits accruing to his lands, and it is immaterial that, on appeal from the clerk, the judge has stricken out from his findings that the improvements exceeded the benefits conferred.

4. **Drainage Districts—Proceedings in rem—Notice—Nunc pro tunc—Assessments.**

   The proceedings for forming a drainage district are *in rem;* and where a valid statute has been complied with therein, and it appears that an owner has not been served with process, it is admissible to notify him, in possession, *nunc pro tunc,* and have the lands therein assessed.

5. **Drainage Districts—Accruing Assessments—Date of Liens.**

   Assessments upon lands in a drainage district formed under a statute become liens *in rem* from the time they are due and payable.

6. **Drainage Districts — Assessments — Liens — Encumbrances — Deeds and Conveyances—Warranty.**

   Assessments upon lands in a drainage district are liens *in rem,* resting upon the lands, into whosesoever hands it may be at the time they accrue; and do not come within the terms of a warranty against encumbrances by deed.

7. **Drainage Districts—Police Regulations—Health—Condemnation.**

   The drainage of swamps and of surface water from agricultural lands in a drainage district are declared by chapter 442, Laws 1909, to be for the public benefit and conducive to the public health, etc., thus falling within the police regulations; and proceedings thereunder are in the exercise of the right of eminent domain.

8. **Drainage Districts—Notice—Assessments—Laches.**

   Where due notice by publication has been made, in the formation of a drainage district, and the report of the viewers has been confirmed by the clerk, without objection, exception, or appeal, the presumption is that an owner of land therein has not been found upon issuance of personal process; and the substituted service, nothing else appearing, is valid.

APPEAL by Florence K. Banks from *Allen, J.,* at chambers at New Bern, 14 February, 1918, heard by him on appeal from the clerk.

*Dawson ,Manning & Wallace and Moore & Dunn for petitioners.*
*Rouse & Rouse and Y. T. Ormand for George Pate.*
*No counsel contra.*

CLARK, C. J. This is a motion in the proceeding for the establishment of the "Moseley Creek Drainage District" in Craven. Said district lies partly in Craven and partly in Lenoir. The proceeding, however, for the establishment of the district was filed and the orders taken in Craven, as authorized. Laws 1909, ch. 442, sec. 2. The petitioner, Mrs. R. C. Banks, in 1915, instituted an independent action to restrain the

collection by the Sheriff of Craven of an assessment levied upon the lands of George B. Pate (which she had conveyed to him in August, 1913) to pay the bonds and interest issued for the construction of the "Moseley Creek Drainage District." On appeal (*Banks v. Lane,* 170 N. C., 14) this Court, in an unanimous opinion, held that the restraining order should be dissolved. The Court said:

"The defendant, George B. Pate, was in possession of the land under conveyance from the *feme* plaintiff, and was duly served with summons, and acquiesced in all the proceedings taken in said cause, or *at least is bound by them.* By virtue of the notice required by above acts, the *feme* plaintiff had opportunity to intervene and assert any right she might have to oppose the proceeding, if deemed contrary to her interests. Laws 1911, ch. 67, sec. 1. Not having done so, she is bound by the judgment under which the bonds were issued for this improvement." . . . "Even if the owner in possession of this land, George B. Pate, had opposed the final decree, or, indeed, opposed the formation of this drainage district, his land therein is chargeable with payment of the assessment thereon, and his mortgagee, the *feme plaintiff,* is in no stronger condition and cannot stay the collection." . . . "In this case the district has been regularly established. There is an adjudication that the required notices have been given. The bonds have been issued and the bondholders have a right to have the assessments collected to pay the interest and principal of the same. The plaintiffs, not having established their claim by coming forward at the proper time to show that their interest would be adversely affected, are bound by the proceedings and cannot restrain the collection of the assessments to pay the bonds issued for the improvement of the land. The presumption is, and the final decree has adjudged in this case, that the land has been benefited by the drainage district more than the burdens assessed against it for such purpose."

"The plaintiffs urge that Pate is insolvent, but this is not material, as the liability is on the land, which has been benefited by the proceedings. The plaintiffs further insist upon the familiar principle that, as the mortgage is for the purchase money, executed simultaneously with the deed to Pate, the title did not vest in him. That is true, for the purpose of preventing the vesting of dower right in his widow or the lien of a docketed judgment. But it has no application here. Pate has a conveyance of the land and is in possession of the same, and the property is liable for taxes or legally adjudged assessments in his hands.

"Under the statute, he was the proper party to represent such land in the formation of the drainage district, and it is bound for a *pro rata* payment of the bonds issued and the interest thereon, just as it is for taxes thereon."

There was a petition to rehear that case (171 N. C., 505), which was

fully argued and carefully considered by the Court. There was an opinion with two concurring opinions, and a dissenting opinion. The Court said, in the opinion in chief, as follows:

"The *feme* plaintiff set out her chain of title down to August, 1913, when she conveyed to George B. Pate and took from him a mortgage back to secure the purchase money. Her complaint averred that she and those under whom she claims had no notice served on her, personally, of the proceedings for the assessments made in said drainage district; that said George B. Pate was insolvent, and asked a restraining order against the collection of said assessment."

"It is very evident that by the expression, 'those under whom she claims,' the *feme* plaintiff refers to the grantors in the deeds set out in her chain of title, and not to George B. Pate. The answer does not deny, but asserts, that the latter, who is in possession, has been served with summons in the cause. In our former decision we called attention to the fact that the statute did not require that mortgagees and lien holders, by judgment or otherwise, should be served with summons; that to require them to be parties would greatly increase the difficulty of creating these drainage districts, and they would have no interest to serve in the creation thereof. As was said in *Drainage Comrs. v. Farm Assn.,* 165 N. C.; 701, where the point was presented, mortgagees and lien holders are not required to be served with notice personally, because 'A mortgage is subject to the authority to form these drainage districts for the betterment of the lands embraced therein. The statute is based upon the idea that such drainage districts will enhance the value of the lands embraced therein to a greater extent than the burden incurred by the issuing of the bonds, and the mortgagee accepted the mortgage knowing that this was the declared public policy of the State.'

"In our former opinion we held that it was no more necessary that mortgagees and other lien holders should be consulted in the formation of such districts than to permit a mortgagee or lien holder in the like absence of statutory provision to enjoin an assessment for the payment of sidewalks or streets or other improvements of property. We said that the proceeding was *in rem,* and that the decree for the formation of the district could not be made until a majority of the original landowners and the owners of three-fifths of all the land which will be affected have signed the petition, and until all other landowners in the district are notified, and that the decree creating the district must be presumed to have been regularly granted and advertisement of notice for other persons interested in the land has been made as required by sections 5 and 15, chapter 442, Laws 1909, and section 1, chapter 67, Laws 1911. The complaint does not aver that the plaintiff is the owner of the land, but, on the contrary, that George B. Pate is the owner and in possession and

does not negative that notice by publication was duly made as to all others in interest, but merely avers that the *feme plaintiff* was not served personally, which is not necessary.

"The Drainage Act has been held constitutional, and the validity of the district laid off under it cannot be attacked collaterally. *Newby v. Drainage District,* 163 N. C., 24.

"The district has been formed, the assessment made without objection from landowners, and Laws 1909, ch. 442, sec. 37, provides that the collection of assessments shall not be defeated, where the proper notices have been given, by reason of any defects occurring prior to the order confirming the final report, but that such report shall be conclusive that all prior proceedings were regular, unless appealed from. This is absolutely necessary, if the public are to be protected in their purchase of the bonds put upon the market. It is to be presumed that when the court has rendered such final judgment and the bonds are issued, there will be no interference with the collection of the assessments to pay the bondholders, but that all controversies were thrashed out and settled before such final judgment.

"Though the proceeding to create the drainage district was instituted before the plaintiff executed her deed to Pate in August, 1913, yet it may well be that the summons, as the answer avers, was served on him after that date and before the final judgment making the assessments and directing the issue of the bonds. This is another reason why the motion should be made in that cause, where the facts in regard to the proceedings are of record." . . .

"The mere fact, so strongly insisted on by plaintiff's counsel, that while this assessment is only $445, all the assessments on this tract aggregate $2,200 on a tract of land which brought, before it was drained, $4,000, is a matter that was doubtless considered before the decree making the assessments and directing the issue of bonds was entered. The presumption is, that the land was benefited far more than the amount of these assessments, or objection would have been made by Pate, the landowner, or by the plaintiff, as to whom notice by publication is by the statute presumed to have been given. But if there has been any wrong done, it is in that cause that the assessment should be reconsidered and upon proper proof reduced or reaffirmed." While the aggregate assessments were $2,200, they accrued in eight annual payments, averaging $275 per year, or less than 81 cents per acre each year for eight years, less than the annual benefit, according to the decree, and after the eight years the land would be free.

In accordance with this opinion, the petitioner, Mrs. Banks, made this motion in the original cause in Craven County, alleging that no summons had been served on her; that no advertisement had been made for

her or any owner of the land sought to be charged; that the assessment was excessive, and that the land has not been benefited by the construction of said drainage district. This notice was served personally on the Commissioners of Moseley Creek Drainage District, and a notice was served by publication on all landowners and parties interested, and George B. Pate was made a party to the proceeding by a summons duly served, and he appeared in said cause. The Court finds the facts contrary to all the above allegations, except as to personal service on Mrs. Banks.

When the case was here before, the plaintiff, Mrs. Banks, complained that she was damaged because she was mortgagee of the 335 acres which she had conveyed to Pate, and that the assessments impaired the value of her security. She now complains on the entirely different ground that she conveyed to Pate by warranty title, and that if she had known of the assessments she would have added the amount of the assessments to the purchase price to recoup the damages she is liable to Pate on the account of such assessments. By her affidavit, it appears that she conveyed the land to Pate on 30 August, 1913. The clerk finds that the proceedings forming the district were regular in all respects, except that there appears to have been no actual *personal* service of summons or notice on Mrs. Banks or Moses Spivey, who was at that time her husband, but that due publication was made for all landowners to appear in said proceedings, as required by law; that viewers were duly appointed and made their report within the time allowed by law; that due notice of the filing of the report was given to all landowners by publication, as required; that the report having been on file in the office of the clerk of the court for the time required by said statute, and no exceptions filed, the clerk affirmed the report and ordered the viewers to proceed, which they did; and, further, that they duly filed the final report, of which notice was given by publication, and for twenty days the report was open to the inspection of the landowners and all others interested, and at the end of said time said report was duly confirmed, and there was no appeal. The plaintiff files an affidavit, in which she recites that during the time the proceedings were pending, and when judgment confirming the assessments was made, 17 April, 1911, she lived within 10 miles of the land, and that when she conveyed the land (335 acres) to George B. Pate, 30 August, 1913, she was residing at Kinston, within 8 miles of the land.

The clerk further found, "From a careful examination of the report of the viewers filed in this cause, and carefully considering the assessments and classifications made of said land, that said land was benefited far more than the amount of the assessments thereon. And, upon fully considering the same, I am of the opinion that the amount of said assessments should not be reduced, but, on the other hand, said assessments are

reasonable, and that the benefits to accrue to said land from the improvements, in my opinion, greatly exceed said assessments, and that said assessments and classifications so made be and the same are in all respects approved and confirmed."

This finding was struck out by the judge, on appeal, on the ground that it was not justified by the evidence, but he made no contrary finding. It is clear that this tract of land is liable for a proper assessment in return for the benefits accruing to it from said drainage. It was not necessary that the owner should have assented to the formation of the drainage district, but only that the necessary number of the owners should have assented, which is not denied. If the land had been omitted by accident from the assessment, upon proper notice it could at any time be assessed, *nunc pro tunc.*

We have held that a mortgagee, as Mrs. Banks claimed to be, in the former case, was not entitled to notice. *Drainage Commission v. Farm Association,* 165 N. C., 701, cited in this case, 171 N. C., 505, as above quoted. But, conceding that she was the owner of the land when the proceedings were instituted, and that she was not bound for lack of personal service, by the judgment, which was not personal to her, and is only *in rem* upon the land, still it was admissible in this proceeding to notify the owner in possession and have the lands assessed in this proceeding, *nunc pro tunc.* The clerk accordingly finds: "Said assessments were made and duly filed, as required by law, on 17 April, 1911; the first assessment due and collectable thereon accrued in October, 1914, according to law, and during said period no portion of said assessments was due and collectable. On said 17 April, 1911, the assessments were duly confirmed."

The clerk further finds that, upon the facts appearing on this motion, he "caused the notice and summons, above referred to, to be served on George B. Pate, to show cause, if any he had, why said land so owned by him should not be liable for the assessments due thereon. And upon his appearance, through counsel, and upon the filing of his said answer, and from the whole evidence before me, it appears that the benefits to said land, as found by the viewers, have actually accrued to said land; since the completion of the land for the drainage thereof the full benefits to said land having been received since its purchase by said George B. Pate." And the clerk further adjudged that each of the said assessments (for the years 1914 to 1921, inclusive) were and became respectively liens upon said land from the date each of them respectively fell due, and became collectable. And the said land was and became liable to said liens from and after the date of each of said assessments thereon became due and payable, and that therefore said land is liable for each of said assessments as the same would be liable for taxes thereon to the same

extent. "This finding of law was reversed by his Honor, who held that the entire amount of said assessments were a lien upon the lands at the time they were conveyed by Mrs. Banks, then Mrs. Spivey, to George B. Pate, and should be collected as they respectively matured." It is true, the lien was adjudged 17 April, 1911, but this is not an encumbrance like a mortgage to secure a past indebtedness, but payments for future benefits, all accruing to George B. Pate after his purchase of the land.

It is inconceivable that George B. Pate, who bought and entered upon this land 30 August, 1913, was not fixed by actual physical notice of the drainage district and its ditches at the time he entered upon the land, or later if the work was done after that time. He has not appealed from the judgment of the court in this case, directing his land to be made liable for the collection of the assessments falling due thereon in 1914, 1915, 1916, 1917, and 1918, all of which have fallen due since he took possession in August, 1913. It is a matter between Pate, the owners of the bonds, which have been sold upon the faith of the decree in which his grantor was made a party, and the commissioners of the drainage district. Whether he can recover against Mrs. Banks on her warranty is a matter which could properly come up only in an action by him against her upon such warranty.

But as the case is before us, we think it proper to say that the view of the clerk is correct, that the lands are liable to the drainage assessments, just as it is liable for other taxes as they fall due from time to time. As owner of the land, he does not have to consent to the assessment of either the drainage tax or county or State taxation. The drainage tax becomes a lien, just as the benefits accrue, *i. e ,* annually. The decree in the drainage district is not a personal liability of Mrs. Banks, nor is it a personal liability of George B. Pate. It is a lien *in rem,* accruing annually and resting upon the land into whosoever hands it may be at that time. Pate, as purchaser, entered into possession of the land nearly two and a half years after the final decree establishing the drainage district, and necessarily with physical knowledge of the drainage district. While such lien was decreed by the final judgment 17 April, 1911, the assessments were not liens then, but only became such as they subsequently accrued, respectively. They were not actual liens and collectable till each fell due, in turn, in the years 1914 to 1921, and therefore not encumbrances within the meaning of the warranty clause of the deed, any more than taxes falling due in each future year. We do not see that Mrs. Banks has any cause to restrain the collection of the assessment for drainage, upon the allegation that she would be liable on her warranty. The future benefits are adjudged to be more than "the charge."

The final decree was made 17 April, 1911, after all the publicity given by the repeated publications and the viewers going upon the property,

making their survey and filing their report. Though Mrs. Banks may not have had notice actually served upon her, she must have had notice of the drainage work being actually done upon her land, and should have proceeded to ask a reassessment if it was excessive. She would have had no right to have her land exempted therefrom, more than three-fourths of the landowners having assented to the formation of the district, as is conclusively shown by the recitals in the judgment. When Pate purchased the land he must have had physical notice of the drainage canals, and if they were not begun till after his purchase, then he at least had physical notice, and should have taken the same step for revaluation of the assessment. The land, 335 acres, cannot escape its liability. It is merely a question of the amount of the assessment, and of this the landowner, whether it was Mrs. Banks or George B. Pate, should have taken steps in apt time to ask a reassessment. The clerk finds that Pate had actual notice of these proceedings by the summons served on him in the former case, October, 1914, and he has asked no reduction of the assessment against the land, nor has he asked to be exempted from the district, but with full knowledge has continued to receive the benefits.

Laws 1909, ch. 442, declares: "The drainage of swamps and the drainage of surface water from agricultural lands, and reclamation of tidal marshes shall be considered a public benefit and conducive to the public health, convenience, utility, and welfare." This makes the general drainage act a police regulation, and proceedings thereunder an exercise of the right of eminent domain.

The amendatory act (Laws 1911, ch. 67, sec. 1) provides that if the owners of any land are unknown or cannot be found, that publication shall be made (which, the Court finds, was done in this case), and that the court shall thereupon assume jurisdiction as to the land owned by such parties, in the public interests. This publication having been made, every presumption is in favor of the regularity of the judgment, and Mrs. Banks (then Mrs. Spivey) not having come forward, the presumption is that her residence was not known, and the substituted service by publication is valid and, furthermore, she is also estopped, as well as Pate, by laches in not coming forward and asking for a reassessment, when, in addition to the publicity of the viewers going upon the land, there was the physical installment of the drainage system and repeated publication of the notices.

Even if this were not so, *Lumber Co. v. Comrs.*, 173 N. C., 117, is not in point, for that case especially refers to *Banks v. Lane*, 170 N. C., 14, and distinguishes it, holding that Pate was a party to that action, as he was, and as he also is in this, and in neither did he ask a reassessment and reduction nor appeal. He certainly is not entitled to have the land exempted from liability. If not an original party, he has had twice the

15—176

opportunity to make objection to the assessment.

While the judgment of his Honor that the assessments are collectable out of the land is correct, we do not concur in his opinion expressed, that the future assessments, to balance the benefits accruing from 1914 to 1921, were encumbrances at the date of the final judgment on 17 April, 1911. This was a "charge" to rise *in futuro* against the land, from time to time, into whosesoever hands the land should pass. The "charge" runs with the land, as do the benefits, both based on the drainage.

Affirmed.