W. O. NESBIT, RECEIVER OF LITTLE SWIFT CREEK DRAINAGE DISTRICT, v. O. O. KAFER AND WIFE, LILLIAN KAFER.

(Filed 30 September, 1942.)

**Drainage Districts §§ 6, 15—**

Where, in a proceeding in Beaufort County, a drainage district, comprising lands in both Beaufort and Craven counties, is duly created and organized under the Drainage Act, sub-chapter III, chapter 94, of Consolidated Statutes of 1919-1924, sections 5312, *et seq.,* as amended, and assessment rolls, showing assessments against each tract of land in the district, have been made and filed in each county, such assessments, as they become due, are liens upon the lands within the district to which they relate, and it is error for the court to dismiss an action in the nature of a mortgage foreclosure, C. S., 7990, for the collection of such drainage assessments against lands in Craven County, even where the assessment rolls for Craven County have been removed and there is left in that county no other record relating to the drainage district, except a map on which are shown the boundaries of the several tracts of land within the district in Craven County—the map itself being sufficient notice to a subsequent purchaser of the proceedings, including the assessment 'rolls filed in Beaufort County.

APPEAL by plaintiff from *Williams, J.,* at May Term, 1942, of BEAUFORT.

Civil action in nature of action to foreclose a mortgage, C. S., 7990, for collection of drainage assessments for the years 1923 to 1940, both inclusive, on certain lands described in the complaint, designated as Tract No. 139 shown on the map, and within the boundary of Beaufort County Drainage District No. 10—under provisions of C. S., 7990.

The case on appeal shows that by judgment of Superior Court of Beaufort County W. O. Nesbit was appointed Receiver of Little Swift Creek Drainage District, located partly in Beaufort County, and partly in Craven County, North Carolina, and authorized thereby, as well as by act of the General Assembly of North Carolina, Public-Local Laws 1941, ch. 315, to collect all drainage assessments "owing by lands situate in either county."

By written stipulation plaintiff and defendants agreed upon the following facts for the trial of this cause only:

"1. Little Swift Creek Drainage District was duly organized and created in accordance with the laws of the State of North Carolina pertaining to Drainage District, and that all acts and things necessary to the creation of said District were done at the time of its creation, including the filing of an assessment roll, showing the assessments placed against each tract of land in said District for the payment of bonds issued by said District. Said assessment roll was filed in Beaufort County, the County in which said District was organized, and in Craven County in which a large part of the lands in said District are situated. Said assessment rolls provide for assessments against the lands in said District to be paid in twenty-four annual installments, the last assessment to be due September 1, 1946.

"2. That the original assessment roll, which was filed in Craven County, was removed therefrom during the year 1934, or prior thereto and since such time there has been no assessment roll on file in Craven County, North Carolina, showing that any lands located in said Drainage District were liable for assessment in said District and no other record in file in Craven County relating to said Drainage District except a map which shows the boundaries of the several tracts of land located in said District which lie in Craven County.

"3. That never since the organization of said Drainage District has the Clerk of the Superior Court of Beaufort County prepared annually during the month of August, or any other time, a form of tax bills or receipts, with appropriate stubs attached, covering all the lands in the district located in Craven County together with an order to the Sheriff or Tax Collector in Craven County, to collect the same, as required by Section 5365 of the North Carolina Code.

"4. That Craven County foreclosed its tax lien against the lands described in the complaint in this cause for the non-payment of taxes

due it and sold said land at public auction as required by law and, in the absence of other bidders, became the purchaser thereof. On August 15th, 1938, the defendant in this action purchased said land from Craven County. At the time he purchased the same he had his attorney to look up the title thereto and he and his attorney together went to the office of the Clerk of the Superior Court of Craven County, to the office of the Sheriff of Craven County, and to the office of the Auditor and Tax Collector of Craven County and made diligent search to find out if there were any unpaid drainage assessments against the same and ascertained that there were no assessments against said land on file in Craven County."

Upon these facts, the court, being of "opinion that the assessments attempted to be levied by the Little Swift Creek Drainage District against the lands of the defendants described in the complaint do not constitute liens thereon," adjudged "that such assessments, being twenty-four (24) in number, the last assessment to be due September 1, 1942 (?), do not constitute liens against the lands of the defendants and that the plaintiff is not entitled to foreclose the same"—and dismissed the action. Plaintiff appeals therefrom to Supreme Court, and assigns error.

*E. A. Daniel for plaintiff, appellant.*
*Carter & Carter for defendants, appellees.*

WINBORNE, J.. These questions are presented as decisive of this appeal:

1. Where in a proceeding instituted in Beaufort County a drainage district, comprising lands lying in both Beaufort and Craven counties, is duly created and organized in accordance with the Drainage Act, subchapter III, chapter 94, of the Consolidated Statutes of 1919-1924, sections 5312, *et seq.,* as amended, and the assessment rolls showing the assessments placed against each tract of land in the district for payment of bonds issued by the district, have been made and filed in each county, are such assessments, as they become due, liens upon the land within the district to which same relate?

2. If so, where the assessment rolls which were filed in Craven County have been removed therefrom, and there is left in that county no other record relating to the drainage district except a map on which are shown the boundaries of the several tracts of land within the district, in Craven County, is such map sufficient in itself to put a subsequent purchaser of such land in Craven County on notice of the proceedings, including the assessment rolls filed in Beaufort County?

The Drainage Act read as a whole furnishes an affirmative answer to each question.

1. Section 5361 of the Consolidated Statutes provides that drainage "assessments shall constitute a first and paramount` lien, second only to State and county taxes, upon the lands assessed for the payment of bonds and interest thereon as they become due, and shall be collected in the manner and by the same officers as State and county taxes are collected," that the assessments shall become due and payable on the first Monday in September each year, and that "if the same shall not be paid in full by the thirty-first of December following, it shall be the duty of the sheriff or tax collector to sell the land so delinquent." See *Taylor v. Comrs.,* 176 N. C., 217, 96 S. E., 1027; *Pate v. Banks,* 178 N. C., 139, 100 S. E., 251.

In the light of these provisions, it is proper to inquire as to when "assessments" come into existence. After prescribing in preceding sections of the statute procedural requirements for the establishment of drainage districts, comprising lands in one or more counties, the preparation and filing of drainage maps "showing . . . the boundary . . . of the lands owned by each individual landowner within the district," the classification of the lands in the district, the calculation of the ratio of assessment of the different classes of land, the ascertainment of the cost of construction of the improvement to be undertaken, and the determination of the amount of bonds necessary to be issued and the issuance and sale thereof to defray the costs, it is provided in section 5360 of Consolidated Statutes that "the board of drainage commissioners shall immediately prepare the assessment rolls or drainage tax list, giving thereon the names of the owners of land in the district and a brief description of the several tracts of land assessed and the amount of assessment against each tract of land . . ." to provide funds each year sufficient to pay principal of and interest on bonds and certain other expenses, and that "these assessment rolls shall be signed by the chairman of the board of drainage commissioners and by the secretary of the board."

While this section further provides that "there shall be four copies of each of the assessment rolls, one of which shall be filed with the drainage record, one shall be filed with the chairman of the board of drainage commissioners . . . one shall be preserved by the clerk of the court, . . . and one shall be delivered to the sheriff, or other county tax collector, after the clerk of the Superior Court has appended thereto an order directing the collection of such assessments, and the assessments shall thereupon have the force and effect of a judgment as in the case of State and county taxes," the assessment arises upon the completion of the assessment rolls.

Thus it is clear that the Legislature intended that the assessments as shown on the assessment rolls which the board of drainage commissioners is required to prepare immediately upon the sale of the bonds, become

liens as they become due, affecting all of the lands on the assessment rolls, which relate to the entire district for the entire period over which the payment of the assessments is spread. In the present case it is agreed that the assessment rolls were not only prepared, but filed.

Furthermore, it may be noted that the order to be appended by the clerk, directing the collection of the assessments, is similar to that required in connection with county tax books delivered to the sheriff or tax collector as authority for collecting taxes, now appearing in Machinery Act, as section 1103 of chapter 310 of Public Laws of 1939, carried in Michie's Code as section 7971 (158), but which does not affect the right of the county to enforce the tax lien in an action in the nature of an action to foreclose a mortgage, C. S., 7990, which course is open to drainage districts. *Drainage District v. Huffstetler,* 173 N. C., 523, 92 S. E., 368; *Com. v. Epley,* 190 N. C., 672, 130 S. E., 497; *Wilkinson v. Boomer,* 217 N. C., 217, 7 S. E. (2d), 491.

But it is contended that under provisions of C. S., 5365, the assessments did not become a lien upon the lands in Craven County until the clerk of Superior Court of Beaufort County had prepared annually during the month of August, form of tax bills or receipts with appropriate stubs attached, covering all the lands located within the district in Craven County, and certified the same to the sheriff or tax collector of Craven County for collection. However, to ascertain the legislative intent this section may not alone be considered. The whole act must be read. And, in this connection it is proper to bear in mind that the receiver of the drainage district in question is not proceeding to have the land sold by the sheriff, but is proceeding in an action in the nature of an action to foreclose a mortgage under the provisions of C. S., 7990. Moreover, reading sections 5364 and 5365 of Consolidated Statutes together, it appears that they pertain to collection of assessments. The former relates to the preparation annually during the month of August, of receipts or tax bills and stubs, properly bound, for drainage assessments due on each tract of land recited in the assessment rolls which lie in the county in which the district is established, that is, in present case, Beaufort County. The latter relates to contemporaneous preparation of like receipts or tax bills and stubs, properly bound, covering all the lands in the drainage district located in other county, or counties, that is, in present case, Craven County. And in these sections, respectively, the clerk is required to enter an endorsement in prescribed form to the sheriff of the respective counties in which the lands lie, as his authority for collecting the assessments. Hence, the provision in C. S., 5365, that "thereupon such drainage assessments in such county shall have the force and effect of a judgment upon the lands so assessed, as in the case of State and county taxes, and shall in all other respects be as valid assess-

ments as those levied upon lands in the county in which the district was established," must be read in connection with the provisions of C. S., 5361, that "the assessments shall constitute a first and paramount lien, second only to State and county taxes upon the lands assessed for the payment of bonds and interest thereon as they become due, and shall be collected in the same manner and by the same officers as State and county taxes are collected." When so considered, it is clear that the quoted provision of C. S., 5365, is not in conflict with the quoted provisions of C. S., 5361, but is intended to implement collection of the assessment by the sheriff. Yet the assessment lien as declared in C. S., 5361, stands, and the drainage district, that is, the receiver, may proceed to enforce it under C. S., 7990.

2. The drainage act, with its various amendments, is a State-wide public statute. As originally enacted, Public Laws 1909, chapter 442, the act declared that drainage systems "shall be considered a public benefit and conducive to public health, convenience, utility and welfare." As so written, the Court, while holding that such a district is not a governmental agency like a township or county, *Pate v. Banks, supra,* decided in October, 1919, and citing *Sanderlin v. Luken,* 152 N. C., 738, 68 S. E., 225; *Comrs. v. Webb,* 160 N. C., 594, 76 S. E., 552; and *Leary v. Comrs.,* 172 N. C., 25, 89 S. E., 803, characterized a drainage district as "a geographical *quasi*-public corporation." Thereafter, in 1921, the General Assembly, in amendment to section 5312 of Consolidated Statutes of 1919, declared "that the districts heretofore and hereafter created under the law shall be and constitute political subdivisions of the State, with authority to provide by law to levy taxes and assessments for the construction and maintenance of said public works." And in same act in amending section 5360 of Consolidated Statutes of 1919, the General Assembly further provided "that the State having authorized the creation of drainage districts, and having delegated thereto the power to levy a valid tax in furtherance of the public purposes thereof, it is hereby declared that drainage districts heretofore or hereafter organized under existing law or any subsequent amendments are created for a public use and are political subdivisions of the State." See Public Laws 1909, chapter 442, section 1, sections 5312 and 5360 of Consolidated Statutes of North Carolina of 1919, as amended by Public Laws 1921, chapter 7, sections 5312 and 5360 of Consolidated Statutes of North Carolina of 1924, and *Wikinson v. Boomer, supra.*

Hence, the Little Swift Creek Drainage District, when created under the provision of the Drainage Act, became a political subdivision of the State with authority to levy taxes and assessments for the construction and maintenance of the public improvements for which it was created. Thus, upon the facts agreed in the present case, the map on file in

Craven County, showing that the land defendants proposed to buy lay within the boundaries of the drainage district, was sufficient to put defendants on notice of the existence of the drainage district, as well as of the provisions of the drainage act, including the provision that such a district covering land in Craven County could be established in a proceeding in Beaufort County. C. S., 5312. Furthermore, the defendants are presumed to have had knowledge of the law, and of the right of the drainage district as a political subdivision of the State to impose upon lands within the district the burden of expenses for public improvements as provided in the Drainage Act. See *Drainage Comrs. v. Farm Association,* 165 N. C., 697, 81 S. E., 947; *Taylor v. Comrs., supra;* and *Pate v. Banks, supra.* Accordingly, upon the facts of record, we hold that, in buying the land shown on the map of record to be within the boundaries of the drainage district, defendants took with notice of all that the record of the drainage proceeding in Beaufort County showed, including the assessment rolls containing assessments which had matured, as well as those to mature in the future, as liens upon the land in question.

The judgment below is

Reversed.