IN RE ALBEMARLE DRAINAGE DISTRICT, BEAUFORT COUNTY NO. 5.

(Filed 20 September, 1961.)

**1. Drainage § 3—**

Drainage districts are quasi-municipal corporations, and the boundaries of a district can be altered only as permitted by statute.

**2. Same—**

Under G.S. 156-62(4) and G.S. 156-65 all lands which may be benefited must be included within the boundaries of the drainage district, and therefore lands lying outside of the boundaries may not be assessed with any portion of the cost of repairing and maintaining improvements originally authorized, G.S. 156-118 *et seq.*, notwithstanding that the board of viewers had recommended that the boundaries of the district be enlarged so as to include the lands in question, there being no statutory authority for enlarging the boundaries of the district prior to the effective date of Ch. 614, Session Laws 1961.

Appeal by Albemarle Drainage District, Beaufort County No. 5, from *Bone, J.,* February 1961 Term of Beaufort.

*John A. Wilkinson for petitioner appellant.*
*Rodman & Rodman for respondents Taylor.*

Rodman, J. This is an adversary proceeding between Albemarle Drainage District, Beaufort County, No. 5, hereafter called petitioner, and J. T. Taylor, Jr. and wife, Dora Taylor, hereafter called respondents. Ignoring the requirments of our rules Nos. 19 and 20, the parties have omitted from the record the pleadings filed by petitioner stating the facts on which the court was expected to act and the relief sought. Instead they stipulated: "The Albemarle Drainage District, Beaufort County No. 5, was duly and validly organized on the 22nd day of June, 1917, and the same functioned for a number of years. That thereafter, by Petition and Order, the said District was reactivated on the 25th day of October, 1958. That proceedings were duly and properly commenced for the levying of assessments to pay for a proposed sale of bonds . . ."

From the stipulations it appears that petitioner came into being in 1917 pursuant to the provisions of subchapter 3 of c. 156 of the General Statutes entitled "Drainage Districts." These statutory provisions permit a majority of the resident landowners or the owners of three-fifths of all the land within a drainage basin to file a petition with the Superior Court for the establishment of a drainage district authorized to construct canals and drains and to levy assessments for the benefits accruing. G.S. 156-56. Upon the filing of such petition the court is required to appoint disinterested viewers and an engineer to investigate and report upon the practicability of the proposed improvement. They are specifically required to report "whether or not all lands that are benefited are included in the proposed drainage district." G.S. 156-62(4). Upon the filing of the report, notice is given to interested parties and a hearing is held. G.S. 156-64. The court has no authority to decree the establishment of a drainage district which does not include within its boundaries all lands benefited by the work to be done. It must enlarge the boundaries to include all such land. G.S. 156-65.

Lands within the boundaries of a district are classified according to benefits to be received and assessed their proportionate part of the cost of the work to be done. G.S. 156-71. After the district has been created, its affairs are managed by a board of commissioners appointed by the court or elected by the property owners. G.S. 156-81. It is the duty of the commissioners to keep the drains and works of the district

in good repair. For this purpose they are authorized to levy assessments on the properties within the district benefited by the repairs. G.S. 156-92. If the cost of repairs and improvements exceeds an annual levy of $1 per acre, the drainage commissioners, upon application to the court, may obtain authority to issue bonds to pay for the cost of the improvements and repairs. G.S. 156-118, 119.

. The stipulation that the district was "reactivated" in 1958 and proceedings were had for the levying of assessments to pay for the sale of a proposed bond issue necessarily implies that the bonds were to be issued to pay the cost of (a) the original construction, G.S. 156-97, or (b) for the repairs and maintenance of the improvements originally authorized, G.S. 156-118 *et seq.* Additional stipulations with respect to work to. be done make it clear that the bonds proposed to be issued and the assessments to be.made for payment thereof were sought pursuant to the provisions of G.S. 156-118.

The board of viewers appointed as directed by G.S. 156-119 recommended to the court that the boundaries of petitioner be enlarged so as to include the lands of respondents and that the same be assessed with a portion of the cost of repairing and maintaining Intercepting Canal, one of the canals of petitioner.

Respondents' land was a part of a large area owned by John L. Roper Lumber Company, one of the petitioners, in 1917, seeking the creation of the district. A part of its lands was included within the boundaries of petitioner, but the part now owned by respondents was excluded.

The viewers appointed on the petition to repair, acting upon the mistaken assumption that respondents desired to have their lands included within the boundaries of the district because of the benefits which would accrue to them, so recommended, fixing the amount which the lands of respondents should be assessed for the repairs. Respondents, being informed of the proposed assessment of their lands, excepted to the report of the board of viewers, insisting that no benefits would accrue to them, that they did not wish to become a party to the proceeding, and the court was without authority to levy an assessment against their lands for the improvement or maintenance of the drains of petitioner. The clerk confirmed the report. Respondents appealed to Judge Bone, who sustained respondents' exceptions.

Drainage districts created pursuant to the provisions of sub-chapter 3 of our drainage law are quasi-municipal corporations. *Newby v. Drainage District,* 163 N.C. 24, 79 S.E. 266; *Davenport v. Drainage District,* 220 N.C. 237, 17 S.E. 2d 1; *Nesbit v. Kafer,* 222 N.C. 48, 21 S.E. 2d 903. Municipal or quasi-municipal corporations created and having their boundaries fixed by statutory formula can alter their

boundaries only as permitted by statute. *In re Annexation Ordinances,* 253 N.C. 637, 117 S.E. 2d 795; *Lutterloh v. Fayetteville,* 149 N.C. 65; *Pittsburg C., C. & St. L. Ry. Co. v. City of Anderson,* 95 N.E. 363; *City of New York v. Village of Lawrence,* 165 N.E. 836; *City of Tucson v. Garrett,* 267 P. 2d 717; 37 Am. Jur. 640; McQuillen, Municipal Corporations, 3rd ed., vol. 2, p. 288.

The Legislature, when it enacted the statute authorizing the establishment of drainage districts, made no provision for an alteration and enlargment of boundaries subsequent to the date of creation for the simple reason that the boundaries as finally determined had to include all lands benefited by the improvement, and the lands so benefited were required to be assessed for the benefits accruing. Hence no assessment could be levied either for original construction or for cost of maintenance on lands beyond the boundaries.

The right to levy such an assessment on lands excluded from the district was squarely presented and decided adversely to the contention of appellant more than thirty years ago. *Drainage District v. Cahoon,* 193 N.C. 326, 137 S.E. 185. The correctness of that decision has not heretofore been challenged. The conclusion reached in the *Cahoon* case accords with decisions of other courts in cases involving the annexation of territory. *Westerhold v. Hale,* 75 N.E. 2d 27; *In re Jefferson County Farm Drainage,* 59 N.W. 2d 655; *Glenn v. Marshall County,* 206 N.W. 802.

The 1961 Legislature, recognizing that lands not originally expected to receive benefit from works to be performed by a drainage district might, by changing conditions and the modification or enlargement and maintenance of the drains, receive benefits from work subsequently proposed to be done, made provision for the enlargement of boundaries of drainage districts. C. 614, S.L. 1961. That statute, however, was not enacted until 2 June 1961 and has no application to this litigation. In fact it repealed the very statutes under which petitioner sought authority from the court to enlarge and maintain and repair its canals. Petitioner makes no contention that its petition conforms to the requirements of that Act.

The judgment of Judge Bone dismissing the proceeding as to respondents Taylor is

Affirmed.