MIDDLE CANAL COMPANY v. W. H. WHITLEY.

(Filed 4 October, 1916.)

**1. Drainage Districts — Constitutional Law — Assessments—Irregularities— Collateral Attack.**

> An assessment made under the provisions of our drainage laws is constitutional and valid, and when it does not appear to be void on its face, it may not be collaterally attacked by a defendant owner of lands embraced in the district, in an action to enforce its payment.

**2. Drainage Districts—Appointment of Assessors—Report—Confirmation.**

> It is immaterial whether the owner of lands in a drainage district, formed under our statutes had notice of a meeting at which a committee had been appointed to assess the lands in the district and determine the amount of each assessment, when the assessment has been accordingly made, and duly ratified and confirmed at a subsequent meeting regularly called and held in accordance with the statute, of which he had notice.

**3. Drainage Districts—Assessments—Proceedings—Irregularities—Presumptions—Procedure.**

> Objection to an irregularity in making an assessment against the owners of land in a statutory drainage district, which does not avoid the assessment on its face, should be made to the properly constituted authorities of the corporation, and its collection will not be enjoined or set aside on account of defects or omissions of statutory requirements which do not affect the substantial justice of the assessment itself or render it void *ab initio,* the presumption being in favor of the regularity of the proceedings.

**4. Drainage Districts—Assessments—Liens—Courts—Jurisdiction.**

> An assessment made upon owners of lands within a statutory drainage district constitutes a lien upon the lands therein and is enforcible by proceedings *in rem* in a court having equitable jurisdiction, in the absence of other provision of the statute; and personal judgment against the defendant may not be had, as in actions arising *ex contractu;* therefore, a justice of the peace has no jurisdiction over actions to enforce the payment of such assessments, and they will be dismissed upon motion to nonsuit when brought in that court.

**5. Drainage Districts—Assessments—Levy—Homestead.**

An owner of lands in a statutory drainage district may not claim his homestead exemption therein against an assessment levied thereon in accordance with the provisions of the statute.

**6. Drainage Districts — Assessments — Docketing — Enforcement — Levy — Courts—Supervision.**

Assessments upon lands within a drainage district made in accordance with the statute become liens on the lands when properly certified by the officers of the corporation and docketed in the office of the Superior Court of the proper county; and executions may issue directing that such lands be sold to pay the assessments and the costs. Laws 1909, sec. 21; Pell's Revisal, secs. 3996, 4003. *Semble*, the courts will review by writ of *certiorari* the action of the drainage corporation in making illegal assessments and enjoin such assessments that are absolutely void upon their face.

CIVIL ACTION tried at February Term, 1916, of BEAUFORT; *Shaw, J.*

The action was commenced before a justice of the peace to recover $45 and interest on account of an assessment under the drainage laws of this State made by plaintiff upon defendant's land.

Upon the trial in the Superior Court a motion to nonsuit was sustained, and plaintiff appealed.

*Small, MacLean, Bragaw & Rodman for plaintiff.*
*Daniel & Warren for defendant.*

BROWN, J. 1. The contention of the defendant that the assessment is void upon the face of the record cannot be sustained. The constitutionality of the drainage laws of this State has been sustained in several cases and cannot now be successfully attacked. *Leary v. Drainage Co., ante,* 25. Drainage districts are regarded as quasi-public corporations created for private benefit, but endowed with the power of eminent domain and other governmental functions for the public benefit. *Sanderlin v. Luken,* 152 N. C., 738; *Drainage Comrs. v. Farm Assn.,* 165 N. C., 697.

This assessment does not appear to be void upon the face of the record, and therefore cannot be attacked collaterally. It was ordered on 28 February, 1910, and a committee appointed to inspect the lands to determine the amount of each assessment. This was done and an assessment of 9 cents per acre was made against defendant's 500-acre tract.

This assessment was duly ratified and confirmed at a subsequent meeting of the plaintiff regularly called and held in accordance with the statute. It is, therefore, immaterial whether defendant had notice of the meeting of 28 February, 1910. If there is any irregularity which

does not avoid the assessment upon its face, it is the duty of defendant to apply to plaintiff to correct it and to set aside the assessment.

An assessment is like a tax, and will not be enjoined or set aside on account of defects and omissions of statutory requirements which are not of such a nature as to affect the substantial justice of the tax itself or render it void *ab initio.* 37 Cyc., 1262, and cases cited in note.

The presumption is in favor of the regularity of the assessment proceedings. *Omnia præsumuntur rite et solemniter esse acta donec probetur in contrarium.*

2. We are of opinion, however, that this action will not lie and that the justice of the peace has no jurisdiction to entertain it. It is not a debt and does not arise *ex contractu.* It is not a personal liability of the landowner to be collected by execution, as against which he would be entitled to a homestead. It is a statutory charge upon the land and must be collected by proceedings *in rem* in a court having equitable jurisdiction, unless some other method is provided by the statute. If the land benefited is insufficient in value to pay the assessment in full, the remainder cannot be collected out of the other estate of the landowner.

Upon the subject it is said in Elliott on Roads and Streets, 400: "It is not easy to perceive how the assessment can extend beyond the property against which it is directed, since the sole foundation of the right to direct and enforce the assessment rests upon the theory that the land receives a benefit equal to the assessment. If the land, with the superadded value given to it by the improvement, will not pay the assessment, there is no constitutional warrant for the right to seek payment of the assessment elsewhere; for the land is all that the improvement can by any possibility benefit, and land (or other property) that is not benefited cannot be seized without violating the principle which forbids the taking of property without compensation, nor without breaking down the only theory upon which it is possible to sustain local assessments; and yet if there is a personal liability, the assessment may be enforced although the land, even as enhanced in value by the improvement, may not be worth a tithe of the extent of making the improvement. The decisions which declare statutes imposing a personal liability upon the landowner unconstitutional are in our judgment so strongly entrenched in principle that they cannot be shaken."

This question is discussed in a learned opinion by *Mr. Justice Shepherd* in the leading case of *Raleigh v. Peace,* 110 N. C., 33, where it is held: "The powers to enforce the collection of such assessments are limited to the specific property presumed to be benefited, and do not authorize a personal judgment against the owner of the property, and, therefore, so much of the act, in this case, as provides that a judgment

rendered for the amount alleged to be due might be docketed and enforced as other judgments is invalid."

It is usual for drainage laws to provide a summary and inexpensive method for collecting assessments, as they are generally small in amount, and the expense of a suit in the Superior Court to collect each assessment would be too much of a burden. The act of 1909, sec. 31, provides a very expeditious as well as effective method of enforcing the collection of assessments, which doubtless is universally followed since that law was enacted. The drainage law in force at the time of the incorporation of the plaintiff and the levy of the assessment in this case is contained in Pell's Revisal of 1908, sec. 3996, etc. We think this act, when properly construed, furnishes a summary method of collecting these assessments without resorting to the Superior Court.

Section 4003 provides that "Every corporator shall be bound to obey the lawful by-laws of the company and pay all dues lawfully assessed on him: *Provided,* he shall in no case pay more than his proportion of the expenses as fixed by this chapter; and such dues may be collected in the corporate name in any court having jurisdiction; and every assessment duly docketed in the county where the land to be affected lies shall be a lien on the lands of the debtor which are connected with the corporation from the date of such docketing."

There is a broad distinction between dues which are imposed upon each member for the support of the corporation and the assessments which are levied upon the lands for the purpose of paying the expense of the drainage canals or ditches. The dues may be collected in the courts of justices of the peace where they are under $200, and out of any property owned by the defendant, although assessments cannot. Therefore, the act provides that these assessments may be duly docketed in the county where the land to be affected lies.

We construe this to mean that these assessments, which are made by the corporation in accordance with the statute and its by-laws, and recorded in its proceedings, may be docketed in the Superior Court in order that they may become liens upon the land against which they have been assessed.

Executions may be issued directing the sale of the land to pay the assessment and the costs. Such executions must necessarily be confined to the land against which the assessments have been levied. They cannot be collected out of any other property, real or personal, of the landowner. In order to docket the assessments, of course, they must be properly certified by the officers of the corporation. We think this is the true meaning and purport of the drainage laws prior to 1909.

It may be asked what remedy the landowner would have against illegal assessments. That question is not before us, but doubtless the

Superior Court could review the action of the drainage corporation in levying these assessments by a writ of *certiorari,* or, if the assessment is absolutely null and void upon its face, the collection of it could be enjoined.

Affirmed.