COMMISSIONERS OF ROBESON COUNTY ET AL. v. R. E. LEWIS,
SHERIFF, ET ALS.

(Filed 14 November, 1917.)

1. **Drainage Districts — Counties—Designated Depositories—Assessments— Public Funds—Statutes.**

Laws 1909, chap. 442, by its provisions for the collection of assessments within an established drainage district by the same officer and by the same method as State and county taxes are collected, the same to be turned into the county treasury, giving right of action by *mandamus* to holders of the bonds issued by the district against the district, or its officers, including the tax collector and treasurer, to compel the levy of special assessments, upon default in payment of the principal and interest on the bonds, with liability on the bonds of the tax collector or treasurer upon default in the duty assigned to them, impress the moneys derived from the assessments, whether the organized district be regarded as a public, *quasi*-public, or private corporation, as public money of the county, to be kept in the depository designated under the statute for such funds, although the funds in question are devoted to a particular or defined use. The amendatory laws of 1911 (chapters 67 and 205) reinforces this construction.

2. **Statutes—Repealing Statutes—Counties—Depositories—School Districts.**

Chapter 645, Public-Local Laws 1911, and chapters 581 and 674, Public-Local Laws 1915, relating to the deposit of public funds of Robeson County, etc., are repealed by section 24, chapter 46, Public-Local Laws 1917.

3. **Drainage Districts — Assessments — Depositories—Statutes—Counties— Treasurer.**

Chapter 46, section 1, Public-Local Laws 1917, abolishes the office of County Treasurer of Robeson County and substitutes therefor, as designated by the county commissioners, one or more solvent banks or trust companies located in the county of Robeson as a depository and financial agent for that county, with provision (section 3) that such bank or trust company shall perform the duties of treasurer in disbursement of the county funds; section 4, that the sheriff, as such, or *ex officio* treasurer, shall turn over all moneys of the county, from whatsoever source derived, whether belonging to the general county fund or otherwise, to the bank or trust company designated: *Held,* under these and the further pertinent provisions of the act, moneys derived from assessments of a drainage district, being county funds, should be deposited, as the statute directs, with the depository lawfully designated.

4. **Same—Deposits—Contracts—Loans.**

Where, under the provisions of statute, a drainage district may loan its money derived from its assessments until required for use in payment of the principal and interest on its bonds maturing serially for a period of 10 years, and the statute provides for a depository for these funds, the drainage commissioners may not contract with a different bank to deposit the funds there, in consideration of such bank buying at par a certain issue of such bonds that could not otherwise have been sold, except below par; nor could the transaction, contemplating a period of 10 years, be con-

strued as such can to the bank as authorized by the statute, and the transaction is void, regarded either as a deposit of the funds or a loan thereof. Public-Local Laws 1917, chap. 447, sec. 7.

5. **Constitutional Law—Statutes—Vested Rights.**

A vested right cannot be acquired under a statute when its terms and conditions have not been complied with; and when a contract is void thereunder, a contention that a later statute impairs a vested right, under the void contract, is untenable.

6. **Drainage Districts—Constitutional Law—Due Process.**

The statute under which a drainage district is formed does not deny the district due process of law by providing for the collection and security of the assessments as other county taxes are collected and kept, etc.

APPEAL by defendant from *Bond, J.,* at September Term, 1916, of ROBESON.

This is an action by the Board of Commissioners of Robeson County and the National Bank of Lumberton against R. E. Lewis, sheriff, the First National Bank of Lumberton, and the Board of Drainage Commissioners of Back Swamp, and Jacob Swamp Drainage District, to compel the defendant bank to turn over the money belonging to said drainage district to the plaintiff bank, the plaintiff claiming to be the legal depository thereof, under chapter 46, Public-Local Laws 1917, and the defendant bank claiming to be entitled to the custody and possession of said money under a contract with said board of drainage commissioners.

The plaintiff bank has been duly appointed the depository and financial agent of the county of Robeson, under said act of 1917, and is entitled to the custody and possession of the money directed by said act to be turned over and held by such depository.

The drainage district, which comprises about 35,000 acres of land, was created and organized under chapter 442, Public Laws 1909, as amended by chapters 67 and 205, Public Laws 1911; and, acting under the authority of said acts, it issued bonds of the district in 1912, of the par value of $150,000, bearing interest at 6 per cent, payable semiannually on the first days of February and August of each year, the principal of said bonds maturing in ten annual installments of $15,000 each, the first installment maturing 1 August, 1915.

In 1915, there being no money on hand to pay the first installment of said bonds, said commissioners, acting under legislative authority, issued $15,000 additional bonds, the proceeds to be used in paying off said first installment.

The commissioners duly advertised for bids for said last bonds, and were not able to obtain a bid higher than 85 cents on the dollar, and the defendant bank thereupon made the following offer to said commissioners:

34—174

HONORABLE BOARD OF COMMISSIONERS, BACK SWAMP AND JACOB SWAMP DRAINAGE DISTRICT, ROBESON COUNTY, NORTH CAROLINA.

GENTLEMEN:—For $15,000 6 per cent drainage bonds to be issued by your district, dated 1 August, 1915, maturing 1 August, 1925, in denominations of $500, with principal and semiannual interest, payable at the National Park Bank, New York City, we agree to pay you for said bonds on 1 August, 1915, the sum of $15,000.

Prior to our taking up and paying for said bonds, you are to furnish us with a full certified transcript of all the proceedings had in their issuance, evidencing their legality to the satisfaction of our attorneys. You are to pass all necessary resolutions and orders for the issuance of the bonds that our attorneys may deem necessary.

This bid is made with the understanding that all funds to the credit of the district now in banks in Robeson County will be immediately *deposited* with us, and that all moneys arising from taxes and assessments collected in said district will be *deposited* in this bank from date of their collection until such time as they may be needed to pay outstanding bonds and interest as same shall become due; interest at 2 per cent on balances.

We agree to have printed the necessary lithographed blank bonds and to pay for the opinion of a reputable bond attorney as to the legality of this issue, for which you are to pay us $1 at the time the bonds are delivered.                    Yours very truly,

                    FIRST NATIONAL BANK OF LUMBERTON, N. C.
(CORPORATE SEAL)                    H. M. McALLISTER, *Cashier.*

The commissioners adopted the following resolutions in acceptance of said bid:

RESOLUTION OF AWARD.

WHEREAS, the First National Bank of Lumberton, N. C., having made a proposition to this board to purchase $15,000 6 per cent refunding bonds of Back Swamp and Jacob Swamp Drainage District of Robeson County, N. C., dated 1 August, 1915, maturing 1 August, 1925, in denominations of $500, with principal and semiannual interest, payable at the National Park Bank, New York City, and pay therefor par, and to pay 2 per cent interest on daily balances of funds *deposited* in said First National Bank of Lumberton, N. C., by the board of drainage commissioners, and to furnish blank bonds, duly lithographed, free of charge, to said board of drainage commissioners; and

WHEREAS, it is made a part of said proposition that the funds in the treasury of said district, and all other funds that may come into the hands of the treasurer of the Back Swamp and Jacob Swamp Drainage District, from this date up to and including 1 August, 1925, and until

such a future time thereafter as all the said bond issue is fully paid and discharged, shall be immediately *deposited* in the First National Bank of Lumberton, N. C.,; and

WHEREAS, this board is authorized by chapter 654 of the Public-Local Laws of the State of North Carolina, passed by the General Assembly, Session of 1915, to issue the amount of bonds above described, to be known as "Bonds of Back Swamp and Jacob Swamp Drainage District, Series 1915," and that this board did duly advertise the said bonds for sale, accórding to law, on the 5th day of May, 1915, and that no bids were received for all or any part of said bond issue, and it is now necessary for this board to sell the said bonds to protect the credit of this district and meet outstanding obligations falling due on 1 August, 1915: Now, therefore, be it

*Resolved by the Board of Drainage Commissioners of Back Swamp and Jacob Swamp Drainage District of Robeson County, North Caro-lina,* That the proposition this day made to this board by the First National Bank of Lumberton, N. C.,.be and the same is hereby accepted, and that the chairman and secretary of the board be, and they are hereby, authorized and directed to execute the said bonds and deliver the same to the First National Bank of Lumberton, N. C., without unnecessary delay.

*And be it further Resolved,* That the treasurer of this board is hereby instructed to withdraw all funds now to the credit of this board in any other bank of Robeson County, N. C., and *deposit* same in said First National Bank of Lumberton, said First National Bank of Lumberton to pay 2 per cent interest on daily balances, and to execute proper certifi-cates of deposit as receipt for said funds.

The treasurer of this board is hereby further instructed to *deposit* all other funds that may come into his hands, as treasurer for this district, derived from taxes and assessments or otherwise, in the First National Bank of Lumberton, N. C., said further sums to bear 2 per cent interest from date of *deposit,* same to be calculated on daily balances.

The deposit of said money with the defendant bank, as set forth in said bid, and its acceptance, was a material inducement to the defendant to pay par value for said bonds.

The defendant bank, shortly after receiving said bonds, sent them by mail to Cleveland, and they were lost in transmission, but, being insured, the defendant bank received from the insurance company the full value of said bonds at par.

Prior to the commencement of this action, the plaintiffs made demand upon the defendant for said money, and at that time there was on deposit in the defendant bank, of the money belonging to said drainage district, $30,575.14, and at the trial there remained on hand, after crediting cer-

tain amounts paid out on vouchers, $10,441.81, which is made up of assessments collected and in part of the proceeds of the sale of land in the drainage district for the nonpayment of assessments.

His Honor rendered judgment in favor of the plaintiffs, and the defendants excepted and appealed.

*E. J. Britt for plaintiff, Board of Commissioners of Robeson County.
McLean, Varser & McLean for plaintiff, National Bank of Lumberton.
Johnson & Johnson and McIntyre, Lawrence & Proctor for defendants.*

ALLEN, J.   The right of the plaintiff bank to the possession and custody of the assessments and other money belonging to the defendant, drainage district, depends on the construction of chapter 46, Public-Local Laws 1917, under which the bank was appointed the depository of certain money described in the act, and upon the validity of the contract between the drainage commissioners and the defendant, with whom the money is now deposited, and a correct determination of the questions involved require a review of the pertinent parts of chapter 442, Public Laws 1909, as amended by chapters 67 and 205, Public Laws 1911, under which the drainage district was created and organized.

The act of 1909 first deals with the organization of the district, and then with the collection of the assessments and their security.

In section 32 it is provided: The assessments shall be collected "by the same officer and in the same manner as State and county taxes are collected"; and in the latter part of the same section, that any landowner may "pay the *county treasurer* the full amount of his assessment and have his land released therefrom."

In section 33: Every person who shall neglect to pay the full amount of his assessment "to the *county treasurer* within the time specified shall be deemed as consenting," etc.

In section 34: The assessments "shall be collected in the same manner, by the same officers as the State and county taxes are collected," and if any installment of principal or interest shall not be paid, the holder or holders of the bonds upon which default has been made have the right of action against the drainage district or the board of drainage commissioners, "wherein the court may issue a writ of *mandamus* against said drainage district, its officers, including the tax collector and treasurer, directing the levying of a tax or special assessment." "The official bonds of the tax collector and county treasurer shall be liable for the faithful performance of the duties herein assigned them.   Such bonds may be increased by the board of county commissioners."

In the latter part of section 36: "Said costs and expenses shall be paid by the order of the court, out of the drainage fund provided for that pur-

pose, and the board of drainage commissioners shall issue warrants there-
for when funds shall be in the hands of the *treasurer.*"

The act of 1911 not only does not interfere with these provisions, but
it reinforces the idea, running through the act of 1909, that the assess-
ments are to be collected and held as other public money.

It provides in section 11: "The board of drainage commissioners may
issue bonds of the drainage district for an amount equal to the total cost
of improvement, less such amount as shall have been paid in, in cash, to
the *county treasurer.*"

If any installment shall not be paid, the holder of such bond upon
which default has been made shall have a right of action against the
drainage district "wherein the court may issue a writ of *mandamus*
against the said drainage district, its officers, including the *tax collector
and treasurer*"; and the right of action is hereby vested in the holder of
such bonds "against any officer on his official bond for failure to perform
any duty imposed by the provisions of this act." "The official bonds of
the *tax collector* and *county treasurer* shall be liable for the faithful per-
formance of the duties herein assigned them. Such bonds may be in-
creased by the board of county commissioners."

In section 12, in respect to collecting assessments: These assessments
"shall be collected in the same manner and by the same officers as the
State and county taxes are collected."

"In all other respects, except as to time of sale of lands, the existing
law as to collection of State and county taxes shall have application to
the collection of drainage assessments under this act."

"It shall be the duty of the *sheriff* or *tax collector* to pay over to the
*county treasurer* promptly the money so collected by him upon said tax
assessments, to the end that the said *treasurer* may have funds in hand
to meet the payments of principal and interest due upon the outstanding
bonds as they mature. It shall be the duty of the *county treasurer,* and
without any previous order from the board of drainage commissioners,
to provide and pay the installments of interest at the time and place as
evidenced by the coupons attached to said bonds, and also to pay the
annual installments of the principal due on said bonds at the time and
place as evidenced by said bonds; and the said *county treasurer* shall be
guilty of a misdemeanor and subject upon conviction to a fine and
imprisonment in the discretion of the court if he shall willfully fail to
make prompt payments of interest and principal upon said bonds, and
shall likewise be liable in a civil action."

In section 13: "That the fee allowed the sheriff or other county tax
collector for collecting the drainage tax . . . shall be 2 per cent of the
amount collected, and the fee allowed the county treasurer for disbursing
the revenue obtained from the sale of the drainage bonds shall be 1 per

cent: *Provided,* that no fee shall be allowed the *sheriff* or *county treasurer* for .collecting or receiving the revenue obtained from the said bonds, nor for *disbursing* the *revenue* raised for paying off the said bonds: *Provided, further,* that in those counties where the *sheriff* and *treasurer* are on a salary basis no fees shall be allowed for collecting or disbursing the funds of the drainage district."

In section 15 : "If the funds in the hands of the *county treasurer* shall be greater than is necessary to pay the annual installments or the annual cost of maintenance of the drainage works, such surplus shall be held by the county treasurer for future disbursement for other purposes."

This summary of the two statutes, which we have largely taken from the brief of counsel, shows clearly that whatever may be the correct designation of the drainage district as a public, *quasi*-public, or private corporation, that the money belonging to the corporation is treated and stamped by the law of its creation as public money, although devoted to a particular and defined use.

The assessments are to be collected by the sheriff, who collects the taxes; they are to be paid over by the sheriff to the county treasurer; they are protected by the bonds of these public officers, and these are the only means provided in the statutes for their collection, custody, and protection.

It therefore appears that when there was a county treasurer for Robeson County he was entitled to the money belonging to the district as public money.

How has this been changed by the abolition of the office. of county treasurer?

We omit a discussion of the effect of chapter 645, Public-Local Laws 1911; chapters 581 and 674, Public-Local Laws 1915, as they are repealed by section 24, chapter 46, Public-Local Laws 1917, and proceed to consider the latter act of 1917.

By the first section it abolishes "the office of county treasurer in the county of Robeson," and by the second it substitutes, by appointment of the county commissioners, "one or more solvent banks or trust companies located in the county of Robeson as a depository and financial agent for said county."

If these two sections stood alone, it would follow by necessary implication that the depository designated by the county commissioners would be entitled, as successor to the treasurer, to the possession and custody of all the funds and money formerly in the hands of the county treasurer, as otherwise there would be no place provided for a part of the funds, and it cannot be supposed that the General Assembly would leave them without a custodian and without protection.

The statute does not, however, stop here. It provides, in section 3: "That the ·bank or trust company appointed as herein provided shall perform all the duties heretofore performed or required by law to be performed by the Treasurer of Robeson County and the Sheriff of Robeson County in respect to the disbursement of public funds coming into their hands by virtue of their office, as well as certain other duties specified in this act." And in section 4: "That all moneys coming into the hands of the Sheriff of Robeson County by virtue of his office as such sheriff, or by virtue of his office as *ex officio* Treasurer of Robeson County, whether belonging to the general fund, general road fund, any district or township road fund, general school fund, and special school-tax fund, county sinking fund, or otherwise, and any and all public moneys, from whatever source derived and coming into the hands of the Sheriff of Robeson County by virtue of his office as sheriff, or by virtue of his office as *ex officio* Treasurer of Robeson County or custodian of any public funds of said county, shall be deposited by the sheriff in such bank as may be designated by the Board of Commissioners of Robeson County in accordance with the provisions of this act."

Note that the last section says, *"all moneys* coming into the hands of the Sheriff of Robeson County by virtue of his office," "whether belonging to the general county fund . . . *or otherwise,"* "and any and all public moneys, from whatever source derived," thus indicating care and caution and a purpose to include every fund possible; and as the money belonging to the drainage district is collected by the sheriff and goes into his hands by virtue of his office, and is dealt with in the statutes as public money, and as the enumeration of funds is followed by the inclusive term, "or otherwise," so that nothing might escape, we are of the opinion that this money comes within the letter and spirit of the act of 1917, and that the plaintiff bank is entitled to the custody and possession thereof, unless the contract between the drainage commissioners and the defendant bank defeats this right.

The drainage commissioners do not claim authority to make the contract with the defendant bank except under section 7 of chapter 447, Public-Local Laws 1915, which is as follows: "That as the *assessments heretofore* levied to provide for the payment of the bonded indebtedness of said drainage district are due and payable on the first Monday in September in each year, beginning with the year 1915; and as under the provisions of this act the proceeds from each assessment will not be needed to pay the next installment of the principal of said bonds until 1 August of the year following the year in which the respective assessments are due and payable, and therefore the proceeds of each assessment would otherwise remain in the treasury of said district until the first day of August of the year following the year in which the respective

assessments are to be collected, and it is advisable that the said funds should be on interest, therefore the board of drainage commissioners of said district be, and they are hereby, authorized and empowered to loan all amounts derived from the respective assessments until such time as said funds are needed to pay interest upon the bonded debt of said district or interest thereon, the said loans to be made to such bank or banks, or otherwise, and at such rate or rates of interest, and with such security for the prompt repayment thereof, as the said board of drainage commissioners may in their discretion determine: *Provided, however,* that no funds shall be so loaned out for a period longer than the date of the maturity of the next installment of the bonded debt of said district."

The authority conferred is "to loan," not to name a depository, and the commissioners can only lend "until such time as said funds are needed to pay interest," etc., nor can they make any loan "for a period longer than the date of the maturity of the next installment of the bonded debt of said district," and if the contract is not in accord with these requirements it is invalid, because in excess of the power of the commissioners.

When we turn to the contract it is manifest that at the time it was made neither the drainage commissioners nor the defendant bank had in contemplation a loan, and that, on the contrary, they were arranging for a depository for the funds.

The word "loan," or "lend," does not appear in the offer of the bank or in its acceptance by the drainage commissioners, while "deposited" is used twice in the offer and in the acceptance, and "deposit" three times in the acceptance.

The rate of interest to be paid by the defendant bank on deposits, 2 per cent, contradicts the idea of a loan,. and particularly when the drainage commissioners, claimed to be the lender, were paying 6 per cent on their bonds.

The life of the contract, extending over a period of 10 years, is also fatal to the contract, whether considered as a loan or a deposit, as the power to lend is restricted by the statute and cannot extend beyond "the date of the maturity of the next installment of the bonded debt of said district."

We therefore conclude that the contract is not within the power conferred by the act, and is invalid, although entered into in good faith and with a desire to subserve the best interests of the district, which fully appears from the record.

If so, the objection of the defendants that the act of 1917 impairs the obligation of the contract is without merit, as there is no obligation to impair if the contract is void.

Nor can it be said to be a taking of the property of the drainage district without due process to provide, in the statutes, under which it exists, for the collection and security of the assessments.

The objection to charging interest at the rate of 6 per cent against the defendant bank from the date of the demand is not one requiring decision, as the judgment directs the drainage commissioners to repay to the bank "all interest paid under this judgment."

We are therefore of opinion the judgment must be affirmed, but this does not interfere with the right of the drainage commissioners to make loans from time to time under said act of 1915.

Affirmed.