ELIZA B. BRANCH ET AL. v. J. M. SAUNDERS AND M. S. COX, COPARTNERS, TRADING AS SAUNDERS & COX.

(Filed 22 February, 1928.)

**Drainage Districts—Assessments—When They Become Lien on Land.**

Liens on lands within a statutory drainage district for assessment charges for its maintenance and upkeep do not fall within a warranty or covenant against encumbrances contained in a deed until they are due and payable, within the intent and meaning of the statutes regulating the subject.

CIVIL ACTION before *Moore, Special Judge,* at November Term, 1927, of BEAUFORT.

This is a controversy without action submitted upon an agreed statement of facts.

Little Swift Creek Drainage District was duly formed according to law. At the time of the formation of said district the plaintiffs were the owners of the land in controversy, and are now the owners thereof. The plaintiffs' lands contained 1,495 acres. Nine hundred and twenty acres of said land are situate within the boundaries of said drainage district and five hundred and seventy-five acres of said land are not so situate, but the entire tract of 1,495 acres constitutes one body of land. The district has duly issued and sold drainage bonds and the defendants have agreed to purchase "all the timber and trees of all kinds and size whatsoever, now standing, growing or lying on the land . . . for the sum of eight thousand dollars; that under said contract the defendants may enter upon said land and cut and remove said timber at any time prior to 1 March, 1929, but said contract contains a provision that the defendants may extend the time for cutting and removing said timber and trees for twelve months from 1 March, 1929, by paying to the plaintiffs, on or before that date, the sum of $950. That it is provided in said contract that the timber and trees growing on said land are to be conveyed free and clear of any and all liens and encumbrances, and especially free and clear of any lien in favor of Little Swift Creek Drainage District for taxes or drainage assessments hereafter to become due and payable."

It further appears from the agreed case that drainage assessments upon the land in said district are payable in twenty-four annual installments, and that all installments have been paid by the plaintiff up to and including 1 September, 1926. That plaintiffs have offered to pay the assessments due 1 September, 1927, but have declined to pay the assessments due 1 September, 1928, and all other assessments maturing subsequent to said date.

The defendants declined to accept the deed for said timber and pay the purchase money upon the ground that the unmatured installments constitute a lien upon the timber. Plaintiffs contend to the contrary.

The statement of facts discloses the following agreement between the parties: "If the assessments coming due 1 September, 1928, and annually thereafter until 1 September, 1946, are a lien on the timber and trees situate both within and without or on timber within the drainage district, then the deed tendered by plaintiffs is insufficient to comply with the terms and provisions of the contract between plaintiffs and defendants. But if the assessments in favor of Little Swift Creek Drainage District, becoming due and payable 1 September, 1928, and annually thereafter, are not liens on said timber, then the deed complies with the contract between plaintiffs and defendants, and plaintiffs are entitled to a decree directing the defendants to comply with the terms and provisions of the contract."

12—195

BRANCH v. SAUNDERS.

Upon the facts and agreement, as presented, the trial judge held that the deed tendered was in compliance with the contract and ordered the defendants to accept the deed and pay the purchase money to the plaintiffs.

From the judgment so rendered the defendants appealed.

*Small, McLean & Rodman for plaintiffs.*
*Ward & Grimes for defendants.*

BROGDEN, J. Drainage assessments unmatured or not due are not liens or encumbrances within the meaning of the law. They are "charges" attaching to the land, as they fall due from time to time and follow the land until all have been liquidated. Thus in *Taylor v. Commissioners,* 176 N. C., 217, this Court held: "The drainage tax becomes a lien, just as the benefits accrue, *i. e.,* annually. . . . It is a lien *in rem,* accruing annually and resting upon the land into whosoever hands it may be at that time." So, also, in *Pate v. Banks,* 178 N. C., p. 141, the Court said: "The lien of the charges for drainage is not a debt of the owner of the land therein, but is a charge solely upon the land and accrues, *pari passu* with the benefits as they shall accrue thereafter. They are not liens until they successively fall due, and are presumed to be paid out of the increased productiveness and other benefits as they accrue from time to time. These assessments are to be levied from time to time to pay, not the indebtedness of the owner of any tract, but to pay the bonded indebtedness of the district. In that they are exactly like bonds issued by the township, county, or State for public benefits and which become liens on property in future only to the extent of the taxes falling due each year to pay the interest and such part of the principal as may become due. One who purchases land in a township, county or State cannot complain that these successive tax liens will from time to time be collectible out of his realty. Whether he knew of the existence of such indebtedness or not makes no difference. They are not encumbrances within the sense of the warranty clause of a deed."

The language above quoted was approved in *Comrs. v. Sparks,* 179 N. C., 581, and in *Foil v. Drainage Comrs.,* 192 N. C., 652.

The defendants rely upon C. S., 5371. The decisions in *Pate v. Banks* and *Foil v. Drainage Comrs., supra,* were rendered after the enactment of C. S., 5371. The decisions and the statute are not necessarily in conflict as contended for by the defendants. C. S., 5371, provides in substance that a purchaser for value without notice under a deed of general warranty, who pays to the sheriff "the amount of said drainage assessment, which is a lien on the land purchased," shall have a right of action against the warrantor of his title.

The agreed statement of facts in the case at bar does not disclose that the defendants are innocent purchasers for value or that they have paid any assessment upon the land purchased. An assessment matured and due, under the decisions, would constitute "a lien on the land purchased," but, as we view it, this statute does not refer to future assessments not due at the time the land was purchased.

We are therefore of the opinion that under the agreement of the parties as presented in the record that installments maturing and payable 1 September, 1928, and thereafter, do not now constitute a lien or encumbrance upon the timber, and the judgment of the trial court is·

Affirmed.