JOHN A. WILKINSON AND DORA B. WARD v. HOLT LEO BOOMER AND WIFE, ERCIL BOOMER, AND THE BOARD OF DRAINAGE COMMIS-SIONERS OF PANTEGO RUN DRAINAGE DISTRICT, BEAUFORT COUNTY DRAINAGE DISTRICT No. 14, SOUTHERN LOAN & INSUR-ANCE COMPANY, TRUSTEE, AND VIRGINIA-CAROLINA JOINT STOCK LAND BANK.

(Filed 28 February, 1940.)

1. **Drainage Districts § 1—**

Drainage districts are political subdivisions of the State, created for a public purpose.

2. **Drainage Districts § 16—**

Since drainage districts are political subdivisions of the State, all statutory remedies and provisions for, or securing payment of the bonds issued by a district under authority of law, which are in effect when the bonds are issued, become a part of the contract between the drainage district and the bondholders.

3. **Drainage Districts § 12—**

The lien of a drainage assessment is *in rem* and attaches to the land in the same manner as a lien for taxes, and creates no personal liability on the part of owners of land in the district.

4. **Drainage Districts § 15—Procedure for collection of drainage assessments by the public authorities.**

It is provided by statute that drainage assessments shall be collected in the same manner as taxes are collected, C. S., 5361, and such liens may be collected by sale of the land by the sheriff, C. S., 8010, with issue of certificates of sale, C. S., 8024, with right in the holder of the certificates to foreclose in due time, C. S., 8037; or by foreclosure of the lien in a suit instituted by the district or the holder of a tax deed or certificate, in the nature of an action to foreclose a mortgage, C. S., 7990, and this remedy for the collection of such assessments is adequate, and assessments collected are public funds although they are to be used solely for the purpose of paying principal and interest on drainage bonds.

**5. Drainage Districts § 16—Holder of drainage bonds may not foreclose drainage liens on lands within the district.**

The remedy provided by statute to the holders of drainage bonds to enforce payment of their obligations is by action against the drainage district and its commissioners and the tax collector and treasurer of the county to compel these officers to perform their legal duties in pursuing the statutory procedure for the collection and application of drainage assessments, which remedy is adequate and exclusive, C. S., 5356, and the holder of past-due bonds may not maintain an action against the owner of land within the district to enforce the lien of delinquent drainage assessments against the land.

APPEAL by plaintiffs from *Nimocks, J.,* at December Term, 1939, of BEAUFORT.

Civil action to enforce lien of drainage district bonds, heard upon demurrers to complaint.

Plaintiffs in complaint filed make substantially these allegations:

1. That defendant, Pantego Run Drainage District, Beaufort County Drainage District No. 14, embracing lands in said county, was organized under the provisions of chapters 442 and 509, Public Laws of 1909, and amendatory acts; that all things required by law to be done to complete the establishment of said district have been done; that a board of commissioners, composed of the defendants J. M. Benson, P. H. Johnson and N. B. Marriner were elected and qualified; and that said "board is now, as to its entire personnel, in existence and operating."

2. That in accordance with the provisions of the said acts, bonds in the amount of $18,000 were issued and sold and "the proceeds expended in the construction of original canals and other necessary work for the construction and operation of said district."

3. That the General Assembly of North Carolina, by chapter 357, Public-Local Laws 1925, declared said bonds to be "valid and a first lien on all the lands of the district"; that the validity of the bonds was sustained by judgment of Superior Court in an action entitled "Board of Drainage Commission, etc., *v.* J. S. Wilkinson," which was affirmed on appeal to Supreme Court, 193 N. C., 830; and that thereafter, in September, 1934, in a civil action in the District Court of the United States for the Eastern District of North Carolina at Washington, a judgment was entered in favor of Safe Deposit & Trust Company of Baltimore, trustee, the then holder of all said bonds, and against board of drainage commissioners for said district in the principal sum of $9,000, represented by the bonds maturing in the years referred to in the complaint there filed.

4. "That from time to time and as law required for the several years since the establishment of the district, correct assessment rolls have been prepared by the secretary of the board of drainage commissioners and

duly filed in the official file of this court, which . . . show the amount of the sum total of said assessments upon which it is hereinafter alleged that the lands hereinafter described are liable and subject to the lien of said assessments."

5. That plaintiffs, by purchase for value from the Safe Deposit and Trust Company of Baltimore, trustee, are the owners of and hold all the outstanding unpaid bonds of the said original issue.

6. That the assessment rolls filed as alleged show assessments against certain specifically described lands of defendant Hoyt Leo Boomer and wife, Ercil Boomer, in the total amount of $860.52, to be due and unpaid for the years 1926-1937, inclusive.

7. That on 1 December, 1934, defendants Hoyt Leo Boomer and wife, Ercil Boomer, executed a deed of trust to defendant Southern Loan and Insurance Company, trustee, for defendant, Virginia-Carolina Joint Stock Land Bank of Elizabeth City, registered as alleged, which has not been discharged, and is a lien on said lands of defendants Boomer subject to the first lien of the drainage assessment as above described.

8. That by reason of the facts as above alleged plaintiffs are entitled to payment of the amount of said assessments, due and unpaid, and to judgment so declaring and for the appointment of a commissioner to make sale of the lands of defendants Boomer for the enforcement of said rights.

Defendants demur to the complaint for that upon the face thereof it appears that facts sufficient to constitute a cause of action are not stated, in that, mainly and substantially: (1) The statute under which the bonds were issued and the assessment made provides an adequate remedy for the enforcement of collection of assessments; (2) in the event of failure to pay either principal or interest represented by the bonds, the statute gives to the holder of the bonds right of action against the drainage district or the board of drainage commissioners wherein writ of *mandamus* may issue as there prescribed, and the right to such other remedies "as may be authorized by law," and (3) in the enforcement of collection of drainage assessments, the bondholders are not given right of action in the nature of an action to foreclose mortgage.

From judgment sustaining demurrers filed, plaintiffs appeal to Supreme Court and assign error.

*H. S. Ward for plaintiffs, appellants.*
*Worth & Horner and Rodman & Rodman for defendants, appellees.*

WINBORNE, J.   The question for decision is this: Where bonds regularly issued by a drainage district duly established, organized and existing under and by virtue of chapter 442, Public Laws of 1909, as

amended, subchapter III of chapter 94, section 5312 *et seq.*, of Consolidated Statutes of 1919, as amended, pertaining to the establishment of drainage districts, for the payment of which assessments duly made under authority of said act are due and unpaid, may the holder of such bonds maintain an action against an individual owner of land within the district for the foreclosure of the lien of such unpaid assessments? The answer is "No."

It is noted at the outset that the Legislature has declared: "That the State having authorized the creation of drainage district and having delegated thereto the power of levying a valid tax in furtherance of the public purposes thereof," such districts "are created for a public use, and are political subdivisions of the State." Public Laws 1921, chapter 7, section 2, amending C. S., 5360.

It is a basic principle that the legislation by authority of which bonds of a municipal corporation or other political subdivision of the State are issued, and their payment provided for, becomes a constituent part of the contract with the bondholders. So the provisions of the statutes regarding the issuance of drainage bonds and the levying, assessing and collecting of assessments, as well as remedies generally existing for the enforcement of such assessments, in effect at the time the bonds are issued, become a part of the contract between the district and the bondholders. Jones on Bonds and Bond Securities, sec. 527, Vol. 1, page 590.

What then are the provisions of the statute under which the bonds held by the present plaintiffs were issued, regarding the collection of the assessments levied for the payment of those bonds?

Section 5360 of Consolidated Statutes, as amended, provides that the assessment roll, after the clerk of Superior Court has appended thereto an order directing the collection of such assessments, "shall thereupon have the force and effect of a judgment as in case of State and county taxes."

Section 5361 of Consolidated Statutes declares in part that: "The assessments shall constitute first and paramount lien, second only to State and county taxes, upon the lands assessed for the payment of the bonds and interest thereon as they become due, and shall be collected in the same manner and by the same officers as the State and county taxes are collected."

Adverting to these and other provisions of the drainage act, in the case of *Comrs. v. Lewis*, 174 N. C., 528, 94 S. E., 8, *Allen, J.,* said: "The assessments are to be collected by the sheriff, who collects the taxes; they are to be paid over by the sheriff to the county treasurer; they are protected by the bonds of these public officers, and they are the only means provided in the statute for their collection, custody and protection." See, also, *Canal Co. v. Whitley*, 172 N. C., 100, 90 S. E., 1.

The statutes relating to sale of real estate for the nonpayment of taxes which are a lien thereon shall be made by the sheriff or other tax collecting officer, C. S., 8010, who issues to the purchaser a written certificate of sale. C. S., 8024. The county, municipality or individual holder of such certificate of sale may in due time foreclose the lien of such certificate under the provisions of C. S., 8037. *Guilford County v. Estates Administration, Inc.*, 213 N. C., 763, 197 S. E., 535.

However, the county or municipality levying taxes or assessments which are a lien upon real estate may at its election proceed under the provisions of C. S., 7990 to enforce the lien in an action in the nature of an action to foreclose a mortgage in which the court shall order a sale of the real estate. *Wilmington v. Moore,* 170 N. C., 52, 86 S. E., 775; *Cherokee v. McClelland,* 179 N. C., 127, 101 S. E., 492.

The right of a drainage district to so proceed in its own name is recognized in *Drainage District v. Huffstetler,* 173 N. C., 523, 92 S. E., 368; *Commission v. Epley,* 190 N. C., 672, 130 S. E., 497.

"Throughout all the authorities a clear distinction seems to run between the cases where a private plaintiff brings an action to compel and levy the collection of taxes to pay a debt due him, and where the sovereign seeks to collect its own taxes for the general purpose of government. The citizen has only such remedies as are given to him; the State has inherently all remedies not voluntarily and unequivocally relinquished." *State and Guilford County v. The Georgia Co.,* 112 N. C., 35, 17 S. E., 10.

The provisions of C. S., 7990, are only available to a private individual or a private corporation "holding a certificate of tax sale or deed under a tax sale, whether as original purchaser at a tax sale or as assignee of the county or other municipal corporation or of any other holder thereof."

The remedies provided for the collection of taxes are adequate. Speaking thereto in *Cherokee v. McClelland, supra, Hoke, J.,* said: "The laws of the State make comprehensive provision for the collection of public revenues affording to the officers charged with the duty adequate remedies for the purpose, both by action and by summary proceeding."

This Court has considered the drainage act in many decisions. It is held that the lien of drainage assessment does not arise *ex contractu,* and is not a debt of the owner of land in the drainage district, but is a charge solely upon the land. *Pate v. Banks,* 178 N. C., 139, 100 S. E., 251; *Canal Co. v. Whitley, supra; Drainage Co. v. Huffstetler, supra; Comrs. v. Sparks,* 179 N. C., 581, 103 S. E., 142; *Com. v. Epley, supra; Foil v. Drainage Com.,* 192 N. C., 652, 135 S. E., 781; *Branch v. Saunders,* 195 N. C., 176, 141 S. E., 583.

It has also been held that the moneys collected from drainage assessments, although devoted to the definite purpose of paying the principal and interest of drainage bonds issued under authority of the drainage act, are public funds. *Comrs. v. Lewis, supra.*

"The bonds issued for the improvement of the district, like bonds issued for public roads or other purposes, become an indebtedness of the district and not of any landowner therein. . . . They are a 'public charge' which falls upon the land in the district *in rem* and are to be collected in the same manner as all other public charges." *Clark, C. J.,* in *Pate v. Banks, supra.*

The drainage act under which the bonds in question here were issued provides in part that: "If any installment of principal or interest represented by the bonds shall not be paid at the time and in the manner when the same shall become due and payable, and such default shall continue for a period of six months, the holders of such bonds upon which default has been made may have a right of action against the drainage district or the board of drainage commissioners of the district wherein the court may issue a writ of *mandamus* against the drainage district, its officers, including the tax collector and treasurer, directing the levying of a tax or special assessment as herein provided, and the collection of same . . . and such other remedies are hereby vested in the holders of such bonds in default as may be authorized by law; and the right of action is hereby vested in the holders of such bonds upon which default has been made authorizing them to institute suit against any officer on his official bond for failure to perform any duty imposed by the provisions of this subchapter. The official bonds of the tax collector and county treasurer shall be liable for the faithful performance of the duties herein assigned." C. S., 5356.

No other remedy is given by statute to the holders of such bonds in default. Hence, the remedies provided are exclusive.

In *Bar Association v. Strickland,* 200 N. C., 630, 158 S. E., 110, *Brogden, J.,* said: "The courts everywhere are in accord upon the proposition that if a valid statutory method of determining a disputed question has been established, such remedy so provided is exclusive and must be first resorted to and in the manner specified therein." This principle was quoted with approval in *Maxwell, Comr., v. Hinsdale,* 207 N. C., 37, 175 S. E., 847, and applied in *Rigsbee v. Brogden,* 209 N. C., 510, 184 S. E., 24.

Applying these principles to the case in hand, it clearly appears that the holders of bonds in default may not by direct action against the landowner proceed to enforce the lien of drainage assessment on his land, but must resort to the remedies provided in the statute.

There are cases in other jurisdictions sustaining the right of the holder of an improvement bond to maintain an action to foreclose on assessment lien, but, in such cases which have come to our attention, the right is derived from grant of specific legislative authority.

The judgment below is

Affirmed.