THE BOARD OF COMMISSIONERS FOR THE COUNTY OF WASHINGTON v. C. T. GAINES, J. C. KIRKMAN AND S. D. DAVIS.

(Filed 20 May, 1942.)

1. **Taxation § 40c:  Process § 5—**

In service of process by publication, the process, or in a suit to foreclose the lien for taxes under C. S., 7990, the notice, must correctly name or describe the parties defendant served by the publication, C. S., 484 (7), in order for the court to acquire jurisdiction.

2. **Same: Drainage Districts § 16—In suit to foreclose tax lien, publication which fails to denominate. holders of drainage district bonds is insufficient to bring them into court.**

Where, in an action to foreclose a tax lien under C. S., 7990, service of process on "bond holders, lien holders or other persons having or claiming some interest in the land" is had by publication, but the publication makes no reference to any drainage district, drainage assessment, liens or bonds or bondholders of any drainage district, the publication is insufficient to give the court jurisdiction of the holders of bonds of the drainage district in which the lands or any part of them lie, and the judgment therein cannot preclude the bondholders from exercising their remedy under prescribed conditions to have the drainage district levy additional assessments against the lands for the purpose of paying the drainage bonds. C. S., 5356.

**3. Drainage Districts § 16—**

Since drainage districts are political subdivisions of the State, all statutory remedies and provisions for, or securing payment of the bonds issued by a district under authority of law, which are in effect when the bonds are issued, become a part of the contract between the drainage district and the bondholders.

**4. Same—**

Sec. 1, ch. 504, Public Laws 1933 (Michie's Code, 5373 [g]), which provides that when drainage assessments against a particular piece of land are paid in full the land shall not be subject to further assessments, does not apply to bonds issued prior to the effective date of the statute, or affect the right of the holders of such bonds under prescribed conditions to require the levying and collection of special assessments for the pur-pose of paying the bonds. C. S., 5356.

APPEAL by defendants from *Frizzelle, J.,* 1 May, 1942. From WASHINGTON.

Controversy without action submitted upon agreed facts, which in so far as pertinent to decision on this appeal, are substantially these:

1. By written contract dated 16 March, 1942, "in consideration of sum of Five Hundred Dollars, and of the covenants and agreements herein-after contained," plaintiff, as party of the first part, agreed to sell, and defendants, as parties of the second part, agreed to purchase, "if free and clear from all liens and encumbrances, by good and sufficient deed without warranty," all those tracts of land in Lees Mill and Plymouth Townships in Washington County, North Carolina, described in two certain recorded deeds, dated 18 July, 1941, from Z. V. Norman, Commissioner, to Washington County, "subject to a timber deed now held by defendants, for the sum of seven thousand dollars, cash, upon tender by the party of the first part of a good and proper deed for said land, or upon tender by the parties of the second part of the remaining unpaid portion of the purchase price to the party of the first part, on or before the 1st day of June, 1942." The agreement specifies that it is subject to a certain lease to the North Carolina Department of Agriculture, and further provides that (lettering interposed for convenience), "It is understood and agreed (a) that a part of said land lies in Beaufort County Drainage District No. 5 (Albemarle Drainage District) and a part . . . in Washington County Drainage District No. 5, and that heretofore said lands have been subject to drainage assessments of said districts, but the owners of said land, having defaulted in the payment of the taxes levied by Washington County, the tax liens of said county were foreclosed by suit in the Superior Court of Washington County, and Washington County became the purchaser. (b) That if the lien of the drainage assessments imposed by the drainage districts, existing July 18, 1941, were extinguished by fore-closure of the county tax liens and the said drainage districts are without

authority to re-assess said lands for the debts of the said drainage districts existing and outstanding at the time of the foreclosure sale and conveyances pursuant thereto, the parties of the second part are bound by these presents to accept deed for said lands and pay the purchase price. (c) But if the said foreclosure sale for county taxes did not extinguish the lien of the said drainage districts for the drainage assessments existing as aforesaid, or if the said drainage districts may hereafter re-assess the said lands for the indebtedness and obligations of the said drainage district existing as aforesaid, then the parties of the second part shall be released from their obligation to purchase said lands. (d) In such event Washington County agrees to refund to the parties of the second part the sum of Five Hundred Dollars, which has been paid for this contract. (e) But the parties of the second part may, at their option, waive the right to require said refund and require conveyance by Washington County of the said lands, subject to such drainage assessments as may exist against the same, and subject further to any further assessments as may thereafter be made against said lands for debts of said districts existing as aforesaid."

2. That the lands in question are in the main embraced within certain legally constituted drainage districts which have caused assessments to be levied for the payment of bonds issued by the districts for the purpose of excavating and constructing drainage canals therein; that "the last drainage assessment" in one district "was due the first Monday in September, 1937," and in another "was due on first Monday in September, 1939" (the dates of levy of assessments and of issuance of bonds not being stated in agreed case); and that "a substantial amount of the drainage assessments . . . particularly against the lands embraced in this controversy, for the payment of said bonded debt, has not been paid, and that likewise a substantial amount of the bonded debt of each district is still unpaid."

3. Plaintiffs have tendered to defendants "a deed or transfer covering said lands and has demanded the purchase price, but defendants have declined to accept said deed and pay the purchase price"—assigning as reasons therefor: (a) That plaintiff does not have title to said lands, free and clear from all liens and encumbrances; (b) that "said lands are subject to the liens of the deeds of trust set out in the complaints and to the drainage assessments levied thereon by the respective districts in which they lie"; and (c) that same "are subject to be re-assessed by the respective drainage districts in which they lie, on account of the indebtedness and obligations of said drainage districts existing and outstanding at the time of the foreclosure sale and conveyances pursuant thereto."

4. That the two deeds from Z. V. Norman, Commissioner, to Washington County, were executed pursuant to judgments in two civil actions,

Nos. 52 and 54, instituted by said county, under provisions of C. S., 7990, against Norfolk Southern Land Company, and others, to enforce lien of taxes levied for years 1930 to 1938, both inclusive, then delinquent, and for years 1939 and 1940, upon approximately 35,000 acres of land listed in the name of Norfolk Southern Land Company, which judgments direct that the Commissioner "sell said lands free and discharged of all liens and encumbrances of every nature, kind and description and all claims which defendants or any one hereafter claiming under them could assert, except the taxes to be assessed thereon for the fiscal year beginning July 1, 1941."

5. That in the complaints filed in the actions, to which reference is made in preceding paragraph, it is alleged, among other things, (a) that the defendants, Boards of Drainage Commissioners for certain named Drainage Districts, have or claim to have "certain drainage tax assessments" levied upon all or part of said land, which assessments are inferior to the liens and assessments of taxes due plaintiff, (b) "that there may be other persons having or claiming some interest in parts or in all of said lands," as expressed in case No. 54, and "as bondholders, lien holders or otherwise in said land," as expressed in case No. 52. These are the only denominations of bondholders appearing in the complaints.

6. That in each of the said tax foreclosure actions the only service of process as to holders of bonds of the drainage districts was by publication. Relative thereto, it appears in the affidavits, upon which orders of publication are based, "that there may be other necessary parties having or claiming an interest as bondholders, lien holders or otherwise in said lands, not disclosed by the public records of said county, the names and residences of whom are not known to the plaintiff." Upon that statement in the affidavits, the clerk ordered that notices of the pendency of the action should be served by publication, and that the notices should "require that any and all other persons not specifically named in the complaint having or claiming an interest as bondholders, lien-holders or otherwise in said land, shall appear and answer or demur to the complaint as herein provided." The notice as published is that, "defendants, Norfolk Southern Land Company" (and certain others, naming them), "and all other persons having or claiming any interest as bondholders, lien-holders or otherwise in the lands hereinafter referred to, will take notice," etc. And, while the lands referred to are described as being owned by Norfolk Southern Land Company, there is no reference to any drainage district, or to any drainage assessment liens, or to bonds or bondholders of any drainage district.

The court below, being of opinion that plaintiffs have authority to convey the lands in question to defendants "in fee simple, free and clear of all encumbrances and not subject to re-assessment by any of the drain-

age districts within which the said lands lie for the debts of said districts existing and outstanding at the time of the foreclosure sales and conveyances pursuant thereto," adjudged that defendants are bound and required to accept deed and to pay the purchase price therefor.

Defendants appeal therefrom to Supreme Court, and assign error.

*Margaret C. Johnson and Norman & Rodman for plaintiff, appellee.*
*Carl L. Bailey for defendants, appellants.*

WINBORNE, J. The question, sufficient for purposes of determining this appeal, is this: May plaintiffs, under the facts agreed, convey the lands in question, freed of liability to further assessment for purpose of raising funds with which to pay indebtedness of the drainage districts in which the lands lie? The answer is No.

A sufficient reason for such answer appears upon the face of the records in the foreclosure proceedings, Numbers 52 and 54, under which Washington County acquired title to said lands, that is, that the court did not acquire jurisdiction over the holders of the outstanding bonds of the drainage districts in which the lands lie, who have the statutory right, under prescribed conditions, C. S., 5356, *Bank v. Watt,* 207 N. C., 577, 178 S. E., 228; *Wilkinson v. Boomer,* 217 N. C., 217, 7 S. E. (2d), 491, to require the levying and collection of special assessments. Consequently, such bondholders are not bound by the judgments in those proceedings.

While in actions for foreclosure of mortgages on real estate, in the nature of which are tax foreclosure proceedings, under C. S., 7990, "if any party having an interest in, or lien upon, such mortgaged premises, is unknown to the plaintiff, and his residence cannot, with reasonable diligence, be ascertained, and such fact is made to appear by affidavit," the court may order that service be made by publication of a notice of the action. C. S., 484, subsection 7. But, in accordance with the rule that notice to a party defendant is required in order to give the court jurisdiction, the process, here the notice, must correctly name the parties. This requirement is mandatory. 21 R. C. L., 1267, Process, section 7.

Applying this principle to the case in hand there is in the published notices no sufficient denomination of the bondholders sought to be served to apprise any holder of bonds of any of the districts involved that the actions affected lands in the districts which issued the bonds held by such bondholders. Hence, there is a failure of notice to them.

In this connection, it is a basic principle that the legislation by authority of which bonds of a municipal corporation or other political subdivision of the State are issued, and their payment provided for, becomes a constituent part of the contract with the bondholders. So the provi-

sions of the statutes regarding the issuance of drainage bonds, and the levying, assessing and collecting of assessments, as well as remedies generally existing for the enforcement of such assessments, in effect at the time the bonds are issued, become a part of the contract between the district and the bondholders. Jones on Bonds and Bond Securities, section 257, Vol. 1, page 590. *Wilkinson v. Boomer, supra.*

The plaintiffs here, as did the plaintiff in *Bank v. Watt, supra,* rely upon the provisions of section 1 of chapter 504, Public Laws 1933, Michie's North Carolina Code of 1939, section 5373 (g). In the *Watt case, supra,* which relates to drainage district bonds issued in 1913, the court, speaking thereto, said : "This act was passed in 1933, and is not deemed to affect the rights of the parties as disclosed by the record in the present case."

In the case at bar similar factual situation is apparent. Applying the provisions of C. S., 5354, as to maturity of bonds issued, and of C. S., 5360, as to maturity of installments of assessments, it is manifest, from facts agreed as to maturity of the last assessments, that the bonds of the drainage districts here referred to were issued prior to the enactment of the 1933 Act, for which reason, if for no other, the Act is not deemed to affect the rights of the holders of such bonds. *Bank v. Watt, supra.*

In view of the conclusions above, we deem it unnecessary to consider other points debated.

The judgment below is

Reversed.